IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                    No. CR 00-0557 JB

DARYL WILKERSON,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Motion to Reduce Sentence Pursuant to Section 404 of the First Step Act, filed January 30, 2019 (Doc. 595)("Motion"). The Court held a hearing on March 31, 2020. See Clerk's Minutes at 1, filed March 31, 2020 (Doc. 613). The primary issues are: (i) whether, pursuant to section 404 of the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018)("First Step Act"), Defendant Daryl Wilkerson is eligible for a sentence reduction; and (ii) whether, considering the 18 U.S.C. § 3553(a) factors, the Court should reduce D. Wilkerson's term of imprisonment from 360 months to time served -- roughly 240 months -- resulting in his immediate release. Specifically, the issue is whether D. Wilkerson's eligibility for First Step Act relief depends on the statutory offense that a jury convicted D. Wilkerson of violating, or whether such relief depends on the actual amount of cocaine base for which the sentencing judge concluded D. Wilkerson was responsible. D. Wilkerson notes that a jury convicted him of an offense involving five grams or more of cocaine base, and Apprendi v. New Jersey, 530 U.S. 466 (2000)("Apprendi"), and Alleyne v. United States, 570 U.S. 99 (2013)("Alleyne"), prohibit the Court's reliance, in determining D. Wilkerson's eligibility for First Step Act relief, on the actual

amount of drugs for which D. Wilkerson was responsible.  Accordingly, D. Wilkerson asserts that he is eligible for First Step Act Relief, because the Fair Sentencing Act of 2010,  Pub. L. No. 111-220, 124 Stat. 2372 ("Fair Sentencing Act"), reduced the statutory mandatory minimum sentence for the offense of which he was convicted.  The United States, however, asserts that Apprendi and Alleyne are not retroactively applicable, and so D. Wilkerson is ineligible for relief, because his actual offense conduct involved 44.57 grams of cocaine base, and, were the United States to charge D. Wilkerson under the Fair Sentencing Act, it would charge -- and convict him -- of violating an offense for which the Fair Sentencing Act does not reduce the statutory penalty.   The Court concludes that, under the First Step Act's plain language, D. Wilkerson's eligibility depends on the amount of crack that the statutory offense provides rather than on the amount that the sentencing judge concluded he possessed.  Accordingly, the Court concludes that: (i) D. Wilkerson is eligible for a sentence reduction pursuant to the First Step Act;  (ii) D. Wilkerson's resulting United States Guidelines Manual ("U.S.S.G." or "Guidelines") range is 262-327 months; and (iii) considering the § 3553(a) factors, the Court will vary downwards D. Wilkerson's sentence by one level, resulting in a sentence of time served.

## FACTUAL BACKGROUND

The Court takes the facts from the presentence report and the parties' briefing. D. Wilkerson was born on October 7, 1961, to Carolyn Wilkerson in Hobbs, New Mexico.  See Presentence Report ¶ 70, at 23, prepared January 31, 2001, filed April 28, 2020 (Doc. 616)("PSR").[1]   D. Wilkerson is the eldest of eight children.  See PSR ¶ 70, at 23.

---

[1]In the old days, the United States Probation Office did not file the Presentence Investigation Report with the Court on CM/ECF, but the Court reviewed it in determining Wilkerson's possible sentence reduction.  The United States Probation Office now files

D. Wilkerson lived most of his life in Hobbs, save for brief stints in Oklahoma City, Oklahoma, and Odessa, Texas.  See PSR ¶ 70, at 23.  D. Wilkerson married Mona Mathews in 1982; together they had three children.  See PSR ¶ 71, at 23.  D. Wilkerson killed Mathews on May 17, 1990, "by inflicting blows with a blunt object."  PSR ¶ 60, at 20.  For the two years preceding D. Wilkerson's arrest in this matter, he lived with Yolanda Williams, with whom D. Wilkerson had a child.  See PSR ¶ 73, at 23.

Regarding his education and employment history, the PSR reports that D. Wilkerson graduated from Hobbs High School in Hobbs, New Mexico, in 1980.  See PSR ¶ 78, at 24. D. Wilkerson attended business classes at New Mexico Junior College in Hobbs, New Mexico, in 1986 and 1987.  See PSR ¶ 78, at 24.  D. Wilkerson has worked several odd jobs, including as a stonemason and doing "off and on" work at his mother's clothing store in Hobbs, New Mexico. PSR ¶ 79, at 24.  D. Wilkerson also worked at various times as a handyman, roofer, and construction worker.  See PSR ¶ 80, at 24-25.

D. Wilkerson had some arrests that did not factor into his criminal history category calculation.  See PSR ¶¶ 65-68, at 22.  These include arrests for harboring or aiding a felon, possession of stolen property, trafficking a controlled substance, and driving while under the influence.  See PSR ¶¶ 65-68, at 22. D. Wilkerson had no pending charges at the time of his arrest in this matter.  See PSR ¶ 69, at 22.  Three offenses factored into Wilkerson's criminal history category calculation.  See PSR ¶ 64, at 21.  First, a jury found Wilkerson guilty of trafficking in a controlled substance in 1988, when D. Wilkerson was twenty-seven years old.  See PSR ¶ 59,

---

Presentence Investigation Reports on CM/ECF.  The Court has now filed the PSR as Doc. 616 on the docket.

at 20.  Second, D. Wilkerson pled guilty in 1990, when he was twenty-eight years old, to voluntary

manslaughter and tampering with evidence for his killing of Mathews.  See PSR ¶ 60, at 20.  Third,

D. Wilkerson pled guilty to conspiring to transport stolen motor vehicles in 1994, when Wilkerson

was thirty-two years old.  See PSR ¶ 61, at 21.

The PSR provides the following description of D. Wilkerson's offense and the enterprise

of which he was a member:

> 11.    . . . Lisa Meridyth and her co-defendants were involved in a conspiracy to distribute cocaine and cocaine base in the Hobbs, New Mexico, and Midland/Odessa, Texas, areas. Joseph Meridyth, a/k/a Jojo; James Meridyth, a/k/a Jamie Meridyth; and Ed Oliver were heavily in the distribution of cocaine base in Odessa, Texas, and Hobbs, New Mexico.  Ronnie Meridyth and Lisa Meridyth were identified as lower level players in the drug distribution ring.

> 12.    On June 30, 1998, agents from the Lea County Drug Task Force were contacted by a confidential informant (CI) with information on persons dealing crack cocaine in the Hobbs, New Mexico, area.  The CI met with agents from the Lea County Drug Task Force at a designated area where the CI was searched and found to have no money or contraband on his person.  The CI was provided with a $50 bill from confidential funds.  The CI was then driven to 409 E. Castle in Hobbs, New Mexico.  The CI was observed by the agents until they met with a black male at the front door of 409 E. Castle.  The two then went inside the residence and were out of sight for approximately fifteen minutes.  The CI was then observed walking back to the agent's location where they drove to a predesignated meeting place.  At the meeting place, the CI turned over the $50 bill that had initially been given to him.  The CI advised that the black male, later identified as Daryl Wilkerson would not sell crack cocaine from his house as he thought he was being watched by the police.  The CI was then again searched and was found not to be in possession of contraband or money.  The CI further advised that Mr. Wilkerson would not sell less than $100 worth of crack cocaine.

> 13.    The CI advised that he told Mr. Wilkerson they could possibly obtain $200 or more from a friend.  Mr. Wilkerson stated he could supply any amount of crack cocaine as he currently had access to a kilogram of track (cocaine base).  Mr. Wilkerson then told the CI that he would meet him at the Allsup's Store located at Snyder and Marland in about an hour with $100 worth of crack cocaine. Mr. Wilkerson further stated that he would have another $100 worth of crack in his pocket if the CI was able to obtain more money.  Mr. Wilkerson was to be driving his 1977 white Cadillac that was present during the time the CI was talking to Mr.

Wilkerson, but was now gone.  The agents then initiated a surveillance in the area of Snyder and Marland.  Agents then observed a white Cadillac at the Allsup's located and Snyder and Marland.  The Cadillac left the Allsup's east on Snyder.

14.     One of the agents observed that the Cadillac did not have a license plate.  The agent then initiated a traffic stop.  The agent observed the driver appeared to be hiding something.  Mr. Wilkerson was advised of his Miranda[ v. Arizona 384 U.S. 436 (1964)], rights, which he stated he understood and agreed to talk with the agents.  The agent explained that he observed Mr. Wilkerson making movements as if he was hiding something.  The agent asked Mr. Wilkerson if he had any cocaine or weapons on his person, to which Mr. Wilkerson stated that he did not.   The agent then requested permission or consent to search and Mr. Wilkerson stated, "Yes, you can search."  Agents located a bag between the seat of the Cadillac which contained suspected crack cocaine.  A field test was conducted on the substance, which returned positive for the presence of cocaine.  The bag was later weighed and revealed a gross weight of approximately seven grams: Mr. Wilkerson refused to inform the agents as to who he purchased the crack cocaine from; however, he did not deny ownership of the crack found in his Cadillac.

15.     During the month of December 1999 a confidential informant was providing information regarding the criminal operations of the Meridyth family. On December 8, 1998, the informant was approached by Daryl Wilkerson, who is a major player in the organization.  Mr. Wilkerson told the informant that he could supply him/her with quantities of crack cocaine.  Mr. Wilkerson advised that the smallest quantity he would sell was 1/2 ounce.  On December 9, 1998, agents from the Lea County Drug Task Force met with the informant at a designated place.  The informant was searched and found to have no money or contraband on his/her person.  The informant was then provided with $550 from confidential funds to initiate a purchase for 1/2 ounce crack cocaine from Mr. Wilkerson.  Mr. Wilkerson earlier told the informant to meet him at the residence located on the northwest corner of Dunn and Elm in Hobbs, New Mexico.  Surveillance was maintained on the informant while en route to the residence.  The informant advised Mr. Wilkerson that he would be driving an older model yellow pickup.  The CI met with Mr. Wilkerson.  Later, the CI met with undercover agents where he removed a plastic bag containing suspected crack cocaine from his pants pocket and handed it to the agents.  The informant was again searched and found not to be in possession of contraband or money.  The agents conducted a field tested on the suspected crack cocaine, which tested positive for the presence of cocaine.

. . . .

22.     On or about January 8, 1999, Hobbs Police Officers observed a brown Buick traveling east on Snyder in Hobbs, New Mexico.  The driver of the vehicle was observed driving recklessly at a high rate of speed. When the vehicle

was pulled over, it was determined that the driver was Daryl Wilkerson and the passenger was Ronnie Meridyth. The driver was arrested for DWI, Reckless Driving, and Insurance Required. The passenger, Ronnie Meridyth, was allowed to leave the scene. The officer received information from the Lea County Drug Task Force regarding Mr. Wilkerson and Mr. Meridyth. Information revealed that illegal drugs were in the vehicle, packed in black electrical tape. The purpose of this type of packaging is to throw the drugs from the vehicle as police attempt to stop them. The officer on scene conducted a search of the roadside in the area the vehicle was observed speeding. The officer observed a ball of black electrical tape on the west side of the roadway approximately three feet from the curb. The officer stopped and picked up the ball of tape, taking care to preserve any fingerprints. The officer cut open the tape and observed an amount of white suspected rock inside individual plastic bags. The substance was consistent with crack cocaine. This evidence was then secured and sent to the Crime Lab for fingerprint analysis. The substance later tested positive for the presence of crack cocaine with a net weight of 44.57 grams. On August 16, 1999, results of the latent fingerprint analysis revealed the prints belonged to Daryl Wilkerson, a/k/a Daryl Haynes, and Ronnie Meridyth.

PSR ¶¶ 11-22, at 5-9.

On September 21, 2000, a grand jury returned a superseding indictment charging D. Wilkerson and four others with seven counts of crack cocaine offenses. See Appointed Counsel's Brief in Support of Defendant's Pro Se Motion to Reduce Sentence Pursuant to Section 404 of the First Step Act of 2018 at 3, filed March 1, 2019 (Doc. 597)("Motion Brief")(citing Superseding Indictment at 1-2, filed September 21, 2000 (Doc. 107)). The Superseding Indictment alleged that, between 1996 and 2000, D. Wilkerson and four others were engaged in a crack cocaine distribution enterprise. See Superseding Indictment at 1-2. The Superseding Indictment named D. Wilkerson in three counts: (i) conspiracy to possess with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and in violation of 21 U.S.C. § 846; (ii) possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2; and (iii) possession with intent to distribute five grams or more of crack cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C.

§ 2.  On June 19, 2000, D. Wilkerson was arrested in Oklahoma.  See PSR ¶ 3, at 3.  Before trial, the United States filed an information charging prior convictions pursuant to 21 U.S.C. § 851, 18 U.S.C. § 2559(c)(1), and U.S.S.G. § 4B1.  See Information Charing Prior Convictions Pursuant to the Provisions of 21 U.S.C. § 851 and 18 U.S.C. § 3559(c)(1) and U.S.S.G. § 4B1.1 at 1, filed November 1, 2000 (Doc. 153).

D. Wilkerson's counts were severed from his codefendants' counts and tried separately. See PSR ¶ 5, at 4.  D. Wilkerson was tried before a jury on two counts: (i) conspiracy to possess with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and in violation of 21 U.S.C. § 846; and (ii) aiding and abetting the possession with intent to distribute five grams or more of a substance containing a detectable amount of cocaine base.  See PSR ¶ 5, at 4.  The jury found D. Wilkerson guilty on the second charge, aiding and abetting the possession with intent to distribute five grams or more of cocaine base.  See PSR ¶ 5, at 4.  The PSR calculated D. Wilkerson's total offense level as 30, based on evidence that police found 44.57 net grams of cocaine base.  See PSR ¶ 55, at 19.  D. Wilkerson's previous convictions earned him ten criminal history points, placing him in criminal history category V.  See PSR ¶ 63, at 21.  Under U.S.S.G. § 4B1.1, however, D. Wilkerson was classified as a career offender, placing him in criminal history category VI.  See PSR ¶ 64, at 21.  D. Wilkerson's total offense level was therefore 37, earning a Guidelines imprisonment range of 360 months to life.  See PSR ¶ 90, at 26.

**1.      The Sentencing Memo.**

D. Wilkerson requested a downward departure from the Guidelines.  See Defendant's Memorandum in Support of Motion for Downward Departure at 1, filed April 19, 2001 (Doc. 281)("Sentencing Memo.").  D. Wilkerson first argued that the seriousness of his criminal

history is "over-represented."  Sentencing Memo. at 1.  D. Wilkerson noted that he committed his prior felonies when he was twenty-seven and twenty-eight years old, and that he served sentences for each felony concurrently.  See Sentencing Memo. at 3.  D. Wilkerson observed that this prior trafficking conviction involved selling 3.5 grams of cocaine to an undercover officer, for which he served 364 days in prison, a partial reduction from his initial nine-year sentence.  See Sentencing Memo. at 3.  D. Wilkerson then said that the "underlying facts of the voluntary manslaughter charge were that Mr. Wilkerson and his wife had an argument out in the road over allegations of alleged infidelity.  She fell and hit her head, and suffered a head injury resulting in death." Sentencing Memo. at 3.  D. Wilkerson asserted that the prosecutor in that case told D. Wilkerson's counsel that D. Wilkerson's statement to police was the only probative evidence, and that "he could not have proven anything other than voluntary manslaughter had the case proceeded to trial." Sentencing Memo. at 3.  D. Wilkerson was sentenced to four and a half years imprisonment.  See Sentencing Memo. at 4.  D. Wilkerson argued that his career-offender status, while technically correct, nearly tripled the sentence he would otherwise receive.  See Sentencing Memo. at 4.  Such a result is grossly unfair, D. Wilkerson contended, given that he was convicted of aiding and abetting, as a junior member of a trafficking conspiracy, possession with intent to distribute five grams of cocaine base.  See Sentencing Memo. at 4.

Second, D. Wilkerson averred that he had demonstrated post-offense rehabilitation.  See Sentencing Memo. at 4.  D. Wilkerson said that, after he committed the offense on January 8, 1999, he left "the very small town of Hobbs, New Mexico, [giving] him an opportunity to separate from the associations and other problems existent in a small town, and to gain employment."  Sentencing Memo. at 4-5.  D. Wilkerson said he worked as a stonemason after leaving Hobbs until his arrest.

See Sentencing Memo. at 5.  D. Wilkerson notes that his supervisors described him as hardworking and respectful, so D. Wilkerson argues that he had turned his life around after leaving Hobbs and its negative influences.  See Sentencing Memo. at 5.  In light of his reformation and criminal history, D. Wilkerson argued that a downward departure would further § 3553(a)'s sentencing goals.  See Sentencing Memo. at 5.

### 2.    The U.S. Sentencing Memo.

The United States responded.  See Response to Defendant's Memorandum in Support of Motion for Downward Departure, filed April 24, 2001 (Doc. 281)("U.S. Sentencing Memo."). The United States averred that downward departures should be reserved for atypical cases, a category to which D. Wilkerson did not belong.  See U.S. Sentencing Memo. at 1-2.  The United States distinguished prior cases, arguing that D. Wilkerson's age, offense characteristics, and criminal history all counseled against a departure.  See U.S. Sentencing Memo. at 2 (citing United States v. Collins, 122 F.2d 1297 (10th Cir. 1997); United States v. Bowser, 941 F.2d 1019 (10th Cir. 1991)).  The United States accordingly argued that D. Wilkerson's criminal history did not differ significantly from typical career offenders, and asked that the sentencing court deny D. Wilkerson's request for a downward departure.  See U.S. Sentencing Memo. at 2-3.  The United States did not address D. Wilkerson's argument about post-offense reform.

### 3.    The Sentencing Hearing.

On April 24, 2001, the Honorable Sven Erik Holmes, United States District Judge for the United States District Court for the Northern District of Oklahoma, sitting by designation, held a sentencing hearing in which D. Wilkerson appeared via video conference.  See Transcript of Hearing at 1 (taken April 24, 2001), filed December 22, 2011 (Doc. 490)("Sentencing Tr.").  The

United States indicated that it did not object to the PSR.  See Sentencing Tr. at 3:14-16 (Court, Burnham).  D. Wilkerson asked that the Court not consider "all the acquitted conduct" in sentencing him.  See Sentencing Tr. at 3:19-24 (Sedillo).  D. Wilkerson noted that most of that conduct applied to the other defendants who were more active in the trafficking conspiracy than D. Wilkerson.  See Sentencing Tr. at 4:1-3 (Sedillo).  Judge Holmes agreed with D. Wilkerson but concluded that, with no objections to the PSR, the total offense level was 37, resulting in a Guidelines imprisonment range of 360 months to life.  See Sentencing Tr. at 4:21-25 (Court).

D. Wilkerson then argued his request for a downward departure.  See Sentencing Tr. at 5:8-9 (Court, Sedillo).  D. Wilkerson testified telephonically.  See Sentencing Tr. at 5:22-23 (Sedillo, Court).  D. Wilkerson stated that, after his arrest, he moved to Oklahoma City and "just really changed my lifestyle." Sentencing Tr. at 6:23-25 (D. Wilkerson).  D. Wilkerson said that he had been "stuck in Hobbs" for his entire life, and that moving to Oklahoma allowed him to develop new, healthier habits.  Sentencing Tr. at 7:1-2 (D. Wilkerson).  D. Wilkerson said that he worked a steady job for a year doing masonry in Oklahoma.  See Sentencing Tr. at 8:9-13 (Sedillo, Wilkerson).  D. Wilkerson stated that, during his year in Oklahoma, he worked, supported his family, and fished.  See Sentencing Tr. at 9:3-8 (D. Wilkerson).  D. Wilkerson also said that it was difficult to find work in Hobbs, which he believed led to some of his poor choices.  See Sentencing Tr. at 9:11-12 (D. Wilkerson).  D. Wilkerson related that, since his arrest, he had been attending bible studies courses in prison.  See Sentencing Tr. at 9:25-10:1 (Sedillo, D. Wilkerson).

On cross-examination, D. Wilkerson acknowledged that, when he left New Mexico for Oklahoma, state drug charges were pending against him, but D. Wilkerson contended that he was planning to return for any court dates.  See Sentencing Tr. at 10:13-15 (Burnham, D. Wilkerson).

D. Wilkerson asserted, however, that he was unaware that a warrant was issued for his arrest.  See Sentencing Tr. at 10:15-17 (Burnham, D. Wilkerson).  D. Wilkerson also said that, while he was in Oklahoma, his children lived with his mother in Hobbs.  See Sentencing Tr. at 10:18-20 (Burnham, D. Wilkerson).

Turning to argument, D. Wilkerson asserted that he was convicted of voluntary manslaughter, because the prosecutor admitted that he had no way to prove that D. Wilkerson intended to kill his wife.  See Sentencing Tr. at 12:14-18 (Sedillo).  D. Wilkerson also noted that the state judge in that case partially suspended D. Wilkerson's sentence.  See Sentencing Tr. at 12:18-20 (Sedillo).  D. Wilkerson argued that his criminal history's circumstances, along with the fact that the crimes occurred over ten years earlier, meant that D. Wilkerson's criminal history category overstated his criminal history.  See Sentencing Tr. at 13:13-17 (Sedillo).  D. Wilkerson acknowledged that this would not lower his criminal history category, but argued that those circumstances justified a downward departure.  See Sentencing Tr. at 14:1-5 (Sedillo).

Judge Holmes stated that the "principle of criminal history is to assess whether or not crimes have occurred in the past which would put any defendant at risk [of] greater punishment if they, she or he, commits a crime in the future . . ."  Sentencing Tr. at 16:1-5 (Holmes, J.).  Judge Holmes also noted that "there's a notice component to that, and that is if you  have committed such crimes you are indeed on notice that your punishment will be far more severe if you commit crimes in the future."  Sentencing Tr. at 16:7-10 (Holmes, J.).  Judge Holmes averred that, as applied to this case, that principle means that "if you've trafficked in drugs and been convicted . . . , and you've killed your wife, you're on notice that the next time you are convicted of trafficking in

drugs, you will be dealt with more harshly than you would be if you hadn't previously trafficked in drugs and killed your wife . . . ."  Sentencing Tr. at 16:13-17 (Holmes, J.).

Judge Holmes then denied the request for a downward departure.  See Sentencing Tr. at 19:2-4 (Holmes, J.).  Judge Holmes concluded that D. Wilkerson's past crimes are more serious than those in D. Wilkerson's cited cases, and that therefore his criminal history category is not overrepresented.  See Sentencing Tr. at 19:6-9 (Holmes, J.).  Judge Holmes accepted, however, that D. Wilkerson did not move to Oklahoma to flee authorities in New Mexico, but rather did so to improve his life.  See Sentencing Tr. at 20: 5-7 (Holmes, J.).  Judge Holmes concluded, nonetheless, that "the evidence is not of such a compelling nature to stand for the proposition that there has been reform of a kind that would support a downward departure under applicable law." Sentencing Tr. at 20:8-10 (Holmes, J.).

Ms. Sedillo then read a letter from D. Wilkerson to the court:

> I come here begging for mercy.  I pray for forgiveness.  Sir, first of all, there are things I should let you know.  That I'm . . . no drug dealer.  My addiction has cost me my life.  I know that I've done some terrible things, . . . by giving the guy [a] ride that cost me the rest of my life.  I've put my children, my parents and my brothers and sisters all through a lot.  There is nothing that I can do to take and give back the time I'm . . . missing with my family.  We all love each other very much. My kids need me and I really need them.  I know that it's nobody's fault but mine. For years I've [been] in a denial stage.  I believe in . . . Jesus Christ and I am a Christian, I come from a Christian family.  And I hope and pray that you can see it in your heart to give me . . . a chance to do for my children, one more chance to show my mother and father that I can make it out in the world.  I know that I do need help in a lot of areas.  I realize my moving to Oklahoma and getting away from that old lifestyle has changed my life.  I've been stuck in Hobbs, New Mexico for so long that I really didn't know anything else.  I enjoy going to work. . . .  I'm an entirely different person.  It took me all of this time to figure this out.  I pray . . . that it's not too late.  Please, Your Honor, don't make me spend the rest of my life in prison, because I'm . . . no drug dealer.

Sentencing Tr. at -21:3-22:2 (Sedillo, quoting a letter by D. Wilkerson).

- 12 -

Judge Holmes sentenced D. Wilkerson to 360 months' imprisonment, the low end of the Guidelines range.  See Judgment at 1.  Judge Holmes also sentenced D. Wilkerson to an eight-year term of supervised release.  See Sentencing Tr. at 22:19-20 (Holmes, J.).  Judge Holmes also granted D. Wilkerson's request that the court recommend he serve his sentence in El Reno, Oklahoma.  See Sentencing Tr. at 24:7-10 (Sedillo, Court).

4.     **The Appeal.**

D. Wilkerson appealed his conviction.  See United States v. Wilkerson, 28 F. App'x 878 (10th Cir. 2002).  D. Wilkerson argued that insufficient evidence supported his conviction.  See 28 F. App'x at 878-79.  The Honorable Mary Beck Briscoe, United States Circuit Judge for the United States Court of Appeals for the Tenth Circuit, concluded for the panel that sufficient evidence supported D. Wilkerson's conviction.  26 F. App'x at 880.  "Substantial circumstantial evidence exists from which a reasonable juror could conclude that D. Wilkerson knowingly aided and abetted the possession of cocaine with intent to distribute."  26 F. App'x at 880.  Accordingly, the Tenth Circuit affirmed D. Wilkerson's conviction.  See 26 F. App'x at 881.

5.     **The § 2255 Petition.**

D. Wilkerson filed a pro se petition to set aside or vacate his sentence.  See Petitioner's Memorandum of Law in Support of His 28 U.S.C. § 2255 Motion, filed March 31, 2004 (Doc. 271)("First § 2255 Petition").  D. Wilkerson argued that: (i) his trial counsel was ineffective, because she advised him to waive a suppression motion in exchange for the United States not filing an information charging prior convictions, and that, when the United States filed the information, she did not renew the suppression motion; and (ii) his sentencing hearing, conducted by video conferencing, violating rule 43 of the Federal Rules of Criminal Procedure.  See First § 2255

Petition at 14.  On May 26, 2004, the Honorable M. Christine Armijo, then-United States District Judge for the United States District Court for the District of New Mexico, adopted a Magistrate Judge's Proposed Findings and Recommended Disposition in which the Honorable Richard Puglisi, United States Magistrate Judge for the United States District Court for the District of New Mexico, concluded that D. Wilkerson's counsel was constitutionally effective and that D. Wilkerson's sentencing, while a violation of rule 43, did not warrant resentencing.  See Order at 1, filed May 26, 2004 (Doc. 380).  D. Wilkerson appealed the Order.  See United States v. Wilkerson, 113 F. App'x 564 (10th Cir. 2005).  The Tenth Circuit affirmed the Order, concluding that D. Wilkerson's counsel chose a reasonable trial strategy and that Wilkerson received constitutionally permissible assistance of counsel.  See United States v. Wilkerson, 113 F. App'x at 567.

###   6.      **The Motion to Reduce Sentence.**

D. Wilkerson filed a motion to reduce his sentence.  See Motion to Reduce Sentence, filed February 20, 2008 (Doc. 412).  D. Wilkerson sought retroactive application of the 2007 Guidelines -- which reduced crack-related sentences -- to his sentence pursuant to 18 U.S.C. § 3582(c).  See Motion to Reduce Sentence at 2.  The Honorable LeRoy Hansen, Senior United States District Judge for the United States District Court for the District of New Mexico, denied D. Wilkerson's request for a sentence reduction.  See United States v. Wilkerson, No. CR 00-557 LH, 2008 WL 11333651, at *1 (D.N.M. Sept. 23, 2008)(Hansen, S.J.).    Judge Hansen concluded that D. Wilkerson was sentenced under U.S.S.G § 4B1.1, not under the amended Sentencing Guideline provision regarding crack cocaine, § 2D1.1.  See 2008 WL 11333651, at *1.  Judge Hansen therefore concluded that D. Wilkerson's original sentence was not based on a subsequently

lowered sentencing range, and so the court lacked jurisdiction to consider Wilkerson's motion. See 2008 WL 11333651, at *1.

###    7.    __The Second Motion to Reduce Sentence.__

D. Wilkerson filed a second request for a sentence reduction. See Motion to Reduce Sentence, filed November 1, 2011 (Doc. 473)("Second Motion to Reduce Sentence"). D. Wilkerson sought retroactive application of the 2011 Guidelines to reduce his sentence. See Second Motion to Reduce Sentence at 2. Judge Hansen again denied D. Wilkerson's request, concluding that D. Wilkerson was sentenced as a career offender and not pursuant to subsequently amended Guidelines. See Memorandum Opinion and Order at 2, filed December 2, 2011 (Doc. 479). Judge Hansen accordingly concluded that the court lacked jurisdiction over the Second Motion to Reduce. See Memorandum Opinion and Order at 2.

###    8.    __The Equitable Relief Motion.__

D. Wilkerson filed a request seeking an equitable remedy. See Motion for Equitable Releif [sic] Due to Legal Errors at Sentencing Pursuant to Federal Rule of Criminal Procedure, filed February 20, 2014 (Doc. 542)("Equitable Relief Motion"). D. Wilkerson again argued that the use of video conferencing at his sentencing violates rule 43 as well as D. Wilkerson's rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States. See Equitable Relief Motion at 1. D. Wilkerson relied on United States v. Torres-Palma, 290 F.3d 1244 (10th Cir. 2002), to argue that sentencing via video conference violates the Due Process Clause. See Equitable Relief Motion at 7. D. Wilkerson accordingly requested plenary resentencing. See Equitable Relief Motion at 11-12.

Judge Hansen denied the Equitable Relief Motion.  See Memorandum Opinion and Order, filed July 8, 2016 (Doc. 583)("July 8, 2016 MOO").  Judge Hansen noted that, in United States v. Torres-Palma, the Tenth Circuit concluded that video conferencing for sentencing is beyond a district court's discretion and is per se prejudicial.  See July 8, 2016 MOO at 2 (citing United States v. Torres-Palma, 290 F.3d at 1248).  Judge Hansen distinguished that case, however, because D. Wilkerson did not challenge his sentencing hearing on direct appeal.  See July 8, 2016 MOO at 2.  Judge Hansen further concluded that the Equitable Relief Motion is a second or successive collateral attack on his conviction without the Tenth Circuit's certification, in violation of 28 U.S.C. § 2255(h).  Judge Hansen accordingly concluded that the court lacked jurisdiction over the Equitable Relief Motion and denied it on that basis.  See July 8, 2016 MOO at 4-5.

### 9.    The Third Motion to Reduce Sentence.

D. Wilkerson filed a third request for a sentence reduction in 2018.  See Motion Seeking Relief Pursuant to the Holloway Doctrine with Consent from the Government, filed March 12, 2018 (Doc. 590)("Third Motion to Reduce Sentence").  D. Wilkerson, proceeding pro se, asserted that

> the Holloway Doctrine[] recognizes that the District Courts have the discretion, inherent in our American System of Justice, to subsequently reduce a defendant's sentence in the interest of fairness "even after all appeals and collateral attacks have been exhausted and there is neither claim of innocence nor defect in the conviction or sentence" when it has clearly been demonstrated that the original sentence sought by the district court[](even when mandated by law) is revealed to be disproportionately severe.

Third Motion to Reduce Sentence at 2 (quoting United States v. Holloway, 68 F. Supp. 3d 310, 311 (E.D.N.Y. 2014)(Gleeson, J.)).  D. Wilkerson acknowledged that United States v. Holloway

"carr[ies] no precedential weight," but argued that the court could rely on it.  Third Motion to Reduce Sentence at 3.

The Honorable Kenneth Gonzales, United States District Judge for the United States District Court for the District of New Mexico, denied the Third Motion to Reduce Sentence.  See Order Denying Motion to Reduce Sentence, filed August 28, 2018 (Doc. 594)("Aug. 18, 2018 Order").  After summarizing United States v. Holloway, Judge Gonzales noted that district courts in the Tenth Circuit "do 'not have inherent authority to modify a previously imposed sentence.'"  Aug. 18, 2018 Order at 3 (quoting United States v. Mendoza, 118 F.3d 707, 709 (10th Cir. 1997)).  Judge Gonzales then considered exhaustively all statutory bases for relief and concluded that none authorized D. Wilkerson's resentencing.  See Aug. 18, 2018 Order at 3-5.  Accordingly, Judge Gonzales denied the Third Motion to Reduce Sentence.  See Aug. 18, 2018 Order at 5.

## PROCEDURAL  BACKGROUND

On December 21, 2018, the President signed the First Step Act into law.  See First Step Act.  The First Step Act's § 404 makes retroactive sections 2 and 3 of the Fair Sentencing Act.  See First Step Act § 404.  D. Wilkerson therefore seeks retroactive application of the Fair Sentencing Act's sections 2 and 3 to his sentence, which could enable the Court to resentence him to time served.

### 1.     The Motion.

On January 30, 2019, D. Wilkerson, acting pro se, filed the Motion.  See Motion at 1.  The primary issues are: (i) whether, pursuant to the First Step Act, D. Wilkerson is eligible for a sentence reduction; and (ii) whether, considering the 18 U.S.C. § 3553(a) factors, the Court should reduce D. Wilkerson's term of imprisonment from 360 months to time served -- roughly 238

months -- resulting in his immediate release.  See Motion at 1.  D. Wilkerson argues that the First

Step Act "changes his statutory maximum."  Motion at 1.  D. Wilkerson notes that he "was

sentenced to 360 months imprisonment," and that the PSR assigned Mr. Wilkerson a base offense

level of 30 based on 44.57 net grams of cocaine base."  Motion ¶ 3, at 2.  D. Wilkerson relates

that, "due to a prior drug offense alleged under 21 U.S.C. § 851, along with a prior crime of

violence he was treated as a career offender" under the Guidelines. Motion ¶ 3, at 2.  D. Wilkerson

states that, although "[i]t used to be that 5 grams of crack under the statute was a minimum

mandatory of 5 years and a maximum sentence of 40 years[,] now, anything under 28 grams is 0-

20 years."  Motion ¶ 4, at 2.  D. Wilkerson asserts that the "effect for those who were convicted of

at least 5 grams . . . is to drop the statutory maximum, and therefore reduce their career offender

ranges from [a total offense level of] 37 to 34 to 32."  Motion ¶ 4, at 2.  "Because the retroactivity

of [the First Step Act] requires that a court impose a reduced sentenced as if the Act was in effect

at the time the covered offense was committed," D. Wilkerson argues, "Guideline career offenders

with the right numbers in their indictments may be entitled to lower sentences, as well as the

straight U.S.S.G. § 2D1.1 crack . . . cases."  Motion ¶ 4, at 2.  D. Wilkerson argues that, when he

was sentenced in 2001, "the entire sentencing scheme was totally different that it is today," and

asserts that unduly harsh crack cocaine sentences motivated Congress to enact the First Step Act.

Motion ¶ 5, at 3.

D. Wilkerson argues that he "has not wasted [his] time" in prison.  Motion ¶ 5, at 4.

D. Wilkerson avers that he "has done everything he could to make hi[m]self a better person upon

his release whenever by educating hi[m]self."  Motion ¶ 5, at 4.  D. Wilkerson attaches to the

Motion certificates showing he was baptized in 2001, and training certificates in "material

- 18 -

ordering," machine maintenance, blueprint reading, "accurate measuring," "tools accountability, and production planning."  Motion at 6-7.  D. Wilkerson also attaches a certificate of completion for an anger management course from December, 2018.  See Motion at 11.  D. Wilkerson asks that the Court construe his pro se motion liberally and resentence him pursuant to the First Step Act. See Motion ¶ 7, at 4 (citing Haines v. Kerner, 404 U.S. 519 (1972)).

## 2.    **The Motion Brief.**

On January 31, 2019, Judge Gonzales appointed counsel to represent D. Wilkerson in his request for resentencing.  See Minute Order at 1, filed January 31, 2019 (Doc. 596).  D. Wilkerson then filed a brief developing the Motion on March 1, 2019.  See Motion Brief at 1.  D. Wilkerson notes that the First Step Act grants the Court jurisdiction to reduce Wilkerson's sentence.  See Motion Brief at 2.  D. Wilkerson contends that the Fair Sentencing Act's "reduced penalty structure would have applied to Mr. Wilkerson's crack cocaine conviction had" the Fair Sentencing Act been in effect at that time.  Motion Brief at 2.

D. Wilkerson avers that, at his trial, the United States dismissed the Count alleging possession with intent to distribute more than five grams of cocaine base and stipulated that it had not proven conspiracy to possess over 50 grams as Count One alleged.  See Motion Brief at 2. D. Wilkerson relates that Judge Holmes then submitted a lesser included offense of aiding and abetting to the jury.  See Motion Brief at 2.  D. Wilkerson notes that the verdict form therefore included two opportunities for the jury to convict Wilkerson:

> "A.    Possession with the intent to distribute 5 grams or more of a mixture or substance containing a detectable amount of Cocaine Base . . . in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) . . . .

> B.       Aiding and abetting the possession with the intent to distribute 5 grams or
> more of a mixture or substance containing a detectable amount of Cocaine Base . .
> . in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. §2(a)."

Motion Brief at 2-3 (quoting Judge Holmes' Instruction to the Jury at 19, filed November 11, 2000

(Doc. 173)).  The jury convicted D. Wilkerson of the lesser offense of aiding and abetting the

possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. §2(a).  <u>See</u> Motion Brief at 4.  D. Wilkerson then notes

that the Bureau of Prisons calculates his release date as August 5, 2026.  <u>See</u> Motion Brief at 5.

D. Wilkerson asserts that the United States Sentencing Commission and the public

concluded that the original penalty regime for crack cocaine was unduly harsh and

disproportionately impacted African Americans like D. Wilkerson, and that this led Congress to

enact the Fair Sentencing Act.  <u>See</u> Motion Brief at 6.  D. Wilkerson describes the Fair Sentencing

Act as lowering the statutory penalties for crack cocaine offenses, providing a sentencing range of

up to twenty years if the offense involves less than twenty-eight grams of crack cocaine.  <u>See</u>

Motion Brief at 6 (citing 21 U.S.C. 841(b)(1)(C)).  The Fair Sentencing Act did not apply

retroactively, however, and D. Wilkerson argues that the Fair Sentencing Act "fell far short since

it left intact many unjust sentences that were imposed from 1986 through 2010."  Motion Brief

at 6.  D. Wilkerson contends that the First Step Act "has not created a freestanding remedy to

retroactively reduce sentences of this type."  Motion Brief at 6.

D. Wilkerson notes that the First Step Act "establishes its remedy in two steps" and "clearly

applies to Mr. Wilkerson at each step."  Motion Brief at 6.  D. Wilkerson first asserts that the First

Step Act covers the offense of which he was convicted.  <u>See</u> Motion Brief at 6 (citing First Step

Act § 404(a) (defining covered offenses)).  D. Wilkerson asserts that the First Step Act also defines

"the circumstances under which" courts may reduce sentences for covered offenses, and D. Wilkerson argues that, because he was sentenced before 2010 for a covered offense, the Court may reduce his sentence. Motion Brief at 7-8 (citing First Step Act § 404(b)). D. Wilkerson also contends that the First Step Act's "narrow limitations on this sentencing-reduction power" do not apply to him, because he has not been resentenced pursuant to the Fair Sentencing Act and has not previously sought relief under the First Step Act. Motion Brief at 8 (citing First Step Act § 404(b)). D. Wilkerson therefore asserts that the Court has authority to reduce his sentence. See Motion Brief at 8.

D. Wilkerson next argues that the Court should reduce his sentence to time served. See Motion Brief at 9. D. Wilkerson observes that the only guidance that the First Step Act provides to district courts is to impose a sentence as if the Fair Sentencing Act's reduced penalties were in effect at the time the defendant committed the covered offense. See Motion Brief at 9. D. Wilkerson argues that the First Step Act is thus a "broad grant of resentencing authority contain[ing] one implied limitation," which is that courts may not impose a sentence lower than the Fair Sentencing Act's minimum. Motion Brief at 9. D. Wilkerson notes that the statutory sentence for his offense in 2001 was five to forty years. See Motion Brief at 9 (citing 21 U.S.C. § 841(b)(1)(B)(iii) (2001)). D. Wilkerson argues that, under the Fair Sentencing Act, "his cocaine-base conviction would have no mandatory minimum." Motion Brief at 9 (citing 21 U.S.C. 841(b)(1)(C) (2018)).

D. Wilkerson argues that reducing his sentence serves the Fair Sentencing Act and the First Step Act's purpose and policy. See Motion Brief at 9. D. Wilkerson contends that, with those statutes, Congress seeks to remedy the "disproportionately harsh sentences" for crack cocaine

offenses, and that Congress made the Fair Sentencing Act retroactive to remedy the injustice of continued incarceration for those who suffered such disproportionate harshness. Motion Brief at 10. A sentence of time served, D. Wilkerson argues, thus serves Congressional intent and "the ends of justice." Motion Brief at 10.

D. Wilkerson argues that the second reason for a reduction "arises from the Sentencing Guidelines." Motion Brief at 10. D. Wilkerson posits that, were the Fair Sentencing Act in effect in 2001, his Guidelines range "would have been much shorter." Motion Brief at 10. D. Wilkerson asserts that the Sentencing Commission "'extrapolate[s]'" the Guidelines ranges from the statutory penalty scheme. Motion Brief at 10 (quoting Dorsey v. United States, 567 U.S. 260, 268 (2012)). D. Wilkerson argues that his base offense level under the post-Fair Sentencing Act drug Guidelines would be 14, with a statutory maximum of thirty years under the § 851 enhancement. See Motion Brief at 10. D. Wilkerson contends that, because he is a career offender, "the resulting offense level is 34, under U.S.S.G. §§ 2D1.1(c)(13), 4B1.1(b)(2) . . . . Combined with a criminal history category of IV, Mr. Wilkerson's resulting advisory guideline range would be 262-327 months." Motion Brief at 10 (citing United States v. Tucker, 3:00-cr-00246-RP (S.D. Iowa Jan. 23, 2019)(Pratt, J.)). D. Wilkerson says that, as of February, 2019, he had served about 224 months. See Motion Brief at 11. D. Wilkerson thus acknowledges that, under the Fair Sentencing Act, he has yet to serve the new statutory minimum sentence, but D. Wilkerson avers that a "sentence of time served, representing a downward variance of 38 months from the low end of the advisory guideline range would be a reasonable sentence." Motion Brief at 10-11.

D. Wilkerson asserts that his age is a third reason for a reduction. See Motion Brief at 11. D. Wilkerson is fifty-eight years old, "an age at which the Sentencing Commission has found that

[the] recidivism rate declines substantially."  Motion Brief at 11 (citing U.S. Sentencing Comm'n, "The Effects of Aging on Recidivism Among Federal Offenders" at 22 (2017), https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders).

D. Wilkerson argues that offenders his age are less likely to commit crimes, a rate that will only decrease as he ages.  See Motion Brief at 11.  "Notably," D. Wilkerson says, "the Sentencing Commission found no difference in the recidivism rates of offenders who were released through retroactive application of the Fair Sentencing Act of 2010 guideline reductions and similar offenders who served their full sentences and were released before the Fair Sentencing Act of 2010 guideline reductions took effect."  Motion Brief at 11 (citing U.S. Sentencing Comm'n, "Recidivism Among Federal Offenders Receiving Retroactive Sentence Reductions: The 2011 Fair Sentencing Act Guideline Amendment (2018)," https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-receiving-retroactive-sentence-reductions-2011-fair-sentencing).  D. Wilkerson accordingly argues that he is unlikely to reoffend, and so the Court should reduce his sentence to time served.  See Motion Brief at 11-12.

D. Wilkerson asserts, as a fourth reason, that the § 3553(a) factors counsel a sentence reduction.  See Motion Brief at 11.  The "nature and circumstances" of D. Wilkerson's offense, he contends, "counsel in favor of a downward variance to a time-served sentence."  Motion Brief at 12.  D. Wilkerson argues that the jury acquitted him "of the substantive offenses and convicted him of aiding and abetting possession with intent to distribute 5 grams or more of crack cocaine."  Motion Brief at 12.  D. Wilkerson also requests that the Court consider that he is "not a drug kingpin" and that his offense is non-violent.  Motion Brief at 12.

- 23 -

D. Wilkerson also asserts that his actions after the offense weigh in favor of a downward departure to a sentence of time served.  See Motion Brief at 12.  D. Wilkerson notes that, shortly after the offense, he left Hobbs and moved to Oklahoma City, which gave him "an opportunity to separate from his former associates and obtain a fresh start."  Motion Brief at 12.  D. Wilkerson says that his employers described him as a reliable hard worker whom they respected.  See Motion Brief at 12.  D. Wilkerson contends that his experience and success in Oklahoma City show that, were he released, he would "work hard and earn an honest living."  Motion Brief at 12.

D. Wilkerson's experiences in prison, he asserts, also demonstrate that a variance is appropriate.  See Motion Brief at 13.  D. Wilkerson contends that he "found God" and has reflected upon and learned from his choices and mistakes.  Motion Brief at 13.  "In conjunction with his spiritual awakening," D. Wilkerson asserts that he has striven to improve his vocational skills and career prospects by completing extensive and numerous training programs.  Motion Brief at 13.  D. Wilkerson cites training certificates in vehicle retrofit, material ordering, safety procedures, machine maintenance, blueprint reading, production planning, metal preparation, and welding.  See Motion Brief at 13 (citing Motion at 12-15).  D. Wilkerson says that such training is ongoing.  See Motion Brief at 13.  D. Wilkerson says that, when he is not "studying or participating in programming," he "enjoys mentoring and assisting other inmates with their legal claims."  Motion Brief at 13.  D. Wilkerson argues that the Motion demonstrates his intelligence and ability to write clearly.  See Motion Brief at 13.  D. Wilkerson also says that he maintains such hobbies that are available to him in prison, and that he strives to "keep a positive outlook and make progress towards rehabilitation despite the bleak reality of a 360-month sentence."  Motion Brief at 13.  D.

Wilkerson argues that his personal improvement and career development support a downward variance.  See Motion Brief at 13.

D. Wilkerson asserts, as a fifth reason for a downward variance, that he "will reintegrate into society as a productive, law abiding citizen."  Motion Brief at 14.  He asserts that he will return to Oklahoma City, and work in the heating, ventilation, and air conditioning industry.  See Motion Brief at 14.  Alternatively, D. Wilkerson says that he is interested in becoming a paralegal to "help others with their legal problems."  Motion Brief at 14.  D. Wilkerson also hopes to reunite with his family, including four grandchildren, and "rebuild his life."  Motion Brief at 14.

D. Wilkerson analogizes his case to United States v. Charles, 901 F.3d 702 (6th Cir. 2018). See Motion Brief at 14.  D. Wilkerson describes that, in that case, Charles was sentenced to thirty-five years in prison for selling cocaine base as a career offender.  See Motion Brief at 14 (citing United States v. Charles, 901 F.3d at 704).  D. Wilkerson asserts that, like him, Charles completed several vocational courses and mentored fellow inmates.  See Motion Brief at 14 (citing United States v. Charles, 901 F.3d at 704).  D. Wilkerson says that Charles received a reduced sentence in 2016 and, upon his release from prison, "found a steady job, volunteered every Saturday, and reconnected with his family."  Motion Brief at 14 (citing United States v. Charles, 901 F.3d at 704).  D. Wilkerson describes that Charles was forced to return to prison after the United States successfully appealed his sentence reduction, but was later the first person released under the First Step Act.  See Motion Brief at 14 (citing United States v. Charles, 901 F.3d at 704).  President Trump later invited Charles to attend the State of the Union Address, in which the President "described the First Step Act as a chance for nonviolent offenders to 'reenter society as productive, law-abiding citizens.'"  Motion Brief at 14 (quoting Vox, "Transcript of the 2019 State of the

Union Address (Feb. 5, 2019), https://www.vox.com/2019/2/5/18212533/president-trump-state-of-the-unionaddresslive-transcript).  D. Wilkerson contends that the "Court has the authority to fulfill this worthy purpose by granting Mr. Wilkerson's request for a time-served sentence and allowing him to reenter society as a productive, law-abiding citizen."  Motion Brief at 15. D. Wilkerson accordingly requests that the Court grant the Motion.

### 3.     The Response.

The United States responds.  See United States' Response to Defendant's Motion to Reduce Sentence Pursuant to Section 404 of the First Step Act of 2018 at 1, filed March 12, 2019 (Doc. 600)("Response").  The United States argues that D. Wilkerson is not eligible for relief under the First Step Act.  See Response at 4.  The United States also notes that, were D. Wilkerson entitled to relief, the First Step Act does not require courts to reduce sentences.  See Response at 4 (citing First Step Act § 404(c)).

The United States first argues that D. Wilkerson is "subject to the same statutory penalties and career offenders Guidelines provisions under the Fair Sentencing Act."  Response at 4.  The United States contends that D. Wilkerson's offense "involved between 28 and 49 grams of crack cocaine," and that, as a result, his sentence would not have been different had the Fair Sentencing Act been in effect when D. Wilkerson was sentenced in 2001.  Response at 4.  The United States contends that the Fair Sentencing Act raises the amount of cocaine base necessary to trigger the mandatory minimum for "A-Level" offenses from 28 to 50 grams, and for "B-Level" offenses from 5 to 28 grams.  Response at 3 (citing 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), and (b)(1)(B)(iii)). The United States also asserts that "both before and after the Fair Sentencing Act, the statutory mandatory minimums double (and the statutory maximum under 21 U.S.C. § 841(b)(1)(B) is

- 26 -

increased to life) if the defendant committed the instant violation after a prior felony conviction for a felony drug offense became final."  Response at 3.  The United States accordingly contends that, because the PSR concludes that D. Wilkerson's offense involved 44 grams of cocaine base, the First Step Act does not change the statutory penalties for his offense.  See Response at 4.

The United States contends that D. Wilkerson mistakenly argues that he is eligible for resentencing because the "the only determination the jury made at Defendant's trial for purposes of applying § 841(b)(1)(B) is that the offense involved 5 grams or more of cocaine base." Response at 5.  The United States argues that Apprendi is responsible for this determination, because, after the Supreme Court of the United States decided that case, "juries were asked to determine only whether the quantity of drugs exceeded the threshold for the statutory mandatory minimum, not to determine the total quantity for which the defendant was responsible."  Response at 5.  The United States argues that the "Court should reject this argument," because D. Wilkerson did not object to the PSR's determination that he was responsible for 44 grams of crack cocaine, and Judge Holmes relied on the PSR in sentencing D. Wilkerson.  Response at 5.  The United States avers that, were D. Wilkerson's interpretation of the First Step Act correct, "no one convicted before enactment of the Fair Sentencing Act of a B-Level crack cocaine offense would be subject to the five-year statutory minimum or the higher 10-year mandatory minimum for recidivists."  Response at 5.  The United States posits that Congress could not have intended such a result.  See Response at 5.

The United States argues that determining D. Wilkerson's eligibility based on the PSR's conclusions does not violate Supreme Court precedent.  See Response at 5.  The United States contends that Apprendi and Alleyne, are inapplicable, because D. Wilkerson's "sentence was

lawful at the time it was imposed." Response at 6. The United States avers that "the jury, under *Apprendi*, made a finding regarding the threshold quantity stated in the statute, for purposes of increasing the statutory maximum penalty, but the court could and did impose statutory mandatory minimum penalties regardless of any jury finding." Response at 6. The United States contends that Harris v. United States, 536 U.S. 545 (2002), authorized that practice until the Supreme Court decided Alleyne in 2013. See Response at 5. The United States argues accordingly that, when D. Wilkerson was sentenced, "any jury finding regarding quantity prior to the Fair Sentencing Act was not binding on the sentencing court with respect to determining the statutory minimum, and no defendant sentenced at that time received the benefit of *Alleyne*." Response at 6. Alleyne should not apply here, the United States argues, because the Tenth Circuit has concluded that Alleyne does not apply retroactively. See Response at 6 (citing, e.g., In re Payne, 733 F.3d 1027, 1029-30 (10th Cir. 2013)). The United States requests that the Court examine D. Wilkerson's sentence "as if Sections 2 and 3 of the Fair Sentencing Act were in effect at the time of the defendant's original sentence, [and] not to change the manner of determining the quantity of crack cocaine." Response at 6. This approach, the United States contends, offends neither Apprendi nor Alleyne, because the Court would not be increasing D. Wilkerson's sentence, but just declining to reduce it. See Response at 6 (citing Dillon v. United States, 560 U.S. 817, 828 (2010)).

Next, the United States asserts that, even if D. Wilkerson is eligible for relief under the First Step Act, the Court should exercise its discretion and deny the Motion. See Response at 8. The United States argues that relief is inappropriate, because "it is apparent, given the known quantity of crack cocaine involved in the offense, that the defendant would have received the same sentence if the Fair Sentencing Act had been in effect at the time of [his] original sentencing."

Response at 8. The United States posits that, were the Fair Sentencing Act in effect at D. Wilkerson's initial sentencing, the jury "would have been asked to find" that the offense involved more than 28 grams of cocaine base. Response at 8. D. Wilkerson's requested relief, the United States argues, would amount to a "windfall not available to defendants whose offenses involved between 28 and 49 grams of crack cocaine and who were prosecuted after the Fair Sentencing Act." Response at 8. The United States contends that such a result would undermine § 3553(a)(6), which directs sentencing courts to avoid unwarranted sentencing disparities. See Response at 8 (citing Dorsey v. United States, 567 U.S. 260, 276-79 (2012)). Instead, the United States asserts that D. Wilkerson "should be treated the same as a defendant who was convicted after the Fair Sentencing Act" and that the Court should deny the Motion. Response at 9. The United States also contends that, if the Court determines that D. Wilkerson is entitled to relief under the First Step Act, the Court should not reduce D. Wilkerson's sentence to time served, because the new Guidelines range is 262-327 months, and D. Wilkerson had served approximately 224 months as of February, 2019. See Response at 9 n.3.

Last, the United States asserts that the Court should deny the Motion without setting a hearing. See Response at 9. The United States contends that the First Step Act and 18 U.S.C. § 3582(c)(1)(B) authorize the Court to reduce D. Wilkerson's sentence, and so D. Wilkerson requests a modification of his sentence. See Response at 10. Because the statutes authorize only a modification and not a resentencing, the United States contends, D. Wilkerson need not be present pursuant to rule 43(b)(4) of the Federal Rules of Criminal Procedure. See Response at 10. The United States argues that the rule of finality, which typically requires defendants' presence at final hearings, exempts sentencing reduction hearings. See Response at 10 (citing Dillon v. United

States, 560 U.S. at 827-28).   Accordingly, the United States requests that the Court deny the Motion without setting a hearing.  See Response at 10.

      **4.**     **The Reply.**

      D. Wilkerson replies.  See Reply to Government's Response to Motion to Reduce Sentence Pursuant to the First Step Act of 2018 at 1, filed March 25, 2019 (Doc. 601)("Reply"). D. Wilkerson first argues that he is "fully eligible for a reduced sentence."  Reply at 1.  He notes that he was convicted of violating a statute whose provisions the Fair Sentencing Act modifies. See Reply at 1.  D. Wilkerson asserts that he was convicted of aiding and abetting the possession with intent to distribute five grams or more cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).   See Reply at 2.   D. Wilkerson contends that the Fair Sentencing Act modifies § 841(a)(1) and (b)(1)(B) by raising the triggering amount from five to twenty-eight grams of cocaine base.  See Reply at 2.  D. Wilkerson also notes that he committed his violation on January 8, 1999, well before August 3, 2010, which is the Fair Sentencing Act's operative date.  See Reply at 1-2.   Finally, D. Wilkerson asserts that he had not already "fully benefited from the Fair Sentencing Act or had a previous motion made pursuant to the First Step Act [that was] denied upon complete review."  Reply at 2.  D. Wilkerson posits that the United States "does not contend otherwise," but rather "resists relief on the basis of imagined hurdles nowhere provided by Congress."   Reply at 2.   D. Wilkerson accordingly argues that the Court "should reject the government's attempt to deprive Mr. Wilkerson of relief from the racist penalty provisions of the Anti-Drug Abuse Act."  Reply at 2.

      D. Wilkerson identifies, as a primary contested issue, whether the PSR's finding that he was responsible for forty-four grams of cocaine base -- and Judge Holmes' adoption of that finding

at the sentencing hearing -- renders him ineligible for a reduced sentence.  See Reply at 2-3. D. Wilkerson asserts that the United States' position contradicts the Fair Sentencing Act and the First Step Act's "plain language." Reply at 2.  D. Wilkerson avers that the United States argues that "the Court should not rely on his offense of conviction but his relevant conduct," and D. Wilkerson asserts that "this is incorrect because the jury only found Mr. Wilkerson was responsible for 5 grams or more of crack." Reply at 3.  D. Wilkerson points to Alleyne to argue that "a jury, not a judge, must make the drug quantity finding beyond a reasonable doubt that either increases the statutory minimum or maximum." Reply at 3 (citing Alleyne, 570 U.S. at 103; Apprendi, 530 U.S. at 490).  D. Wilkerson therefore argues that Supreme Court precedent and the Fair Sentencing Act, together, provide that the drug quantity that the jury found, and not the quantity that the PSR found, sets his statutory imprisonment range.  See Reply at 3.

D. Wilkerson contends that caselaw "across the country" contradicts the United States' position.  See Reply at 4 (citing, United States v. Powell, 356 F. Supp. 3d. ____, 2019 WL 1198005, *4 (N.D.N.Y. 2019)(Hurd, J.); United States v. Laguerre, No. 02-cr-30098, 2019 WL 861417, *3 (W.D. Va. Feb. 22, 2019)(Dillon, J.); United States v. Tucker, 356 F. Supp. 3d 808 (S.D. Iowa 2019)(Pratt, J.); United States v. Delaney, No. 6:08-CR-00012, 2019 WL 861418, *2 (W.D. Va., Feb. 22, 2019)(Moon, J.); United States v. Glore, No. 99-CR-82-PP, 2019 WL 1060838, *6 (E.D. Wis., March 6, 2019)(Pepper, J.)).  D. Wilkerson asserts that the United States charged him with aiding or abetting possession with intent to distribute five grams or more of cocaine base, and D. Wilkerson argues that "the government did not choose a different number for the charge." Reply at 4-5.  D. Wilkerson avers that his verdict form thus "reflected only" that his conviction pertained to five or more grams of cocaine base, and that to now "assume that the

government would charge an offense involving 28 grams or more, and that the jury would find the offense involved 28 grams or more, would run afoul of *Apprendi*." Reply at 5. Were the Fair Sentencing Act's provisions operative when he was convicted, D. Wilkerson argues, his statutory penalty range would be 0 to 30 years and his advisory range would be 262 to 327 months. See Reply at 5 (citing 21 U.S.C. § 841(b)(1)(C)). D. Wilkerson argues that "[t]his has the effect of lowering his career offender enhancement under U.S.S.G. § 4B1.1.(b), which lowers his total offense level to 34." Reply at 5.

D. Wilkerson next argues that current law applies when courts impose a sentence. See Reply at 5. To support this position, D. Wilkerson asserts that the First Step Act's § 404 "makes clear that a court must 'impose' a sentence 'as if' the Fair Sentencing Act were [in] effect at the time the offense was committed." Reply at 5 (quoting First Step Act § 404(b)). D. Wilkerson avers that Congress consistently uses "impose" to mean "sentence." Reply at 5-6 (citing 18 U.S.C. § 3553(a), (a)(2), (b)(1), (b)(2)(iii), and (c); 18 U.S.C. §§ 3555, 3557). D. Wilkerson argues that current law governs sentencing. See Reply at 6 (citing United States v. Hinds, 713 F.3d 1303, 1305 (11th Cir. 2013)("The general rule is that a defendant should be sentenced under the law in effect at the time of sentencing")).

D. Wilkerson disagrees with the United States' argument that Alleyne does not apply retroactively and so is inapplicable. See Reply at 6. D. Wilkerson states: "Obviously, Section 404 applies in every case where a defendant's sentence was previously considered 'lawful,' and the statute creates an independent basis for 'imposing' a reduced sentence." Reply at 6 (quoting First Step Act § 404(a)). D. Wilkerson asserts that he does not invoke Alleyne as a separate ground for relief under 28 U.S.C. § 2255, and so "whether *Alleyne* is retroactive is beside the point." Reply

at 6.  Instead, D. Wilkerson contends that the only question is whether a court that imposes a sentence today applies current law, or whether it applies law that was applicable on the original sentencing date.  See Reply at 7.  Section 404 answers this question, D. Wilkerson argues, "when it directs courts to 'impose' a sentence, rather than to modify it or reduce a previously imposed sentence, as in the case of 18 U.S.C. § 3582(c)."  Reply at 7.  D. Wilkerson also contends that courts providing First Step Act Relief must apply current law, because Congress enacted the First Step Act to "address prior wrongs," so it would "be illogical if Congress, in an attempt to achieve this end, directed courts to perpetuate unconstitutional practices."  Reply at 7.  D. Wilkerson also notes that courts presume that Congress acts consistently with its duty to uphold the Constitution.  See Reply at 7 (citing Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988)).  D. Wilkerson contends that the United States' request that the Court rely on the PSR's drug quantity and not on the applicable statutory quantity would violate this principle and run afoul of Alleyne.  See Reply at 7-8.  Similarly, D. Wilkerson argues that the United States' reliance on United States v. Dillon is misplaced, arguing instead that United States v. Dillon addresses 18 U.S.C. § 3582(c)'s limitations on district courts.  See Reply at 8.  D. Wilkerson argues that the First Step Act is not based on the authority that § 3582 grants, but rather creates a new, independent statutory basis for courts to reduce sentences.  See Reply at 8.  D. Wilkerson also contends that the First Step Act's § 404 places no limitation on courts' sentencing authority analogous to that which § 3582(c)(2) imposes.  See Reply at 8.

Next, D. Wilkerson argues that the Court should reduce his sentence to time served.  See Reply at 8.  D. Wilkerson reiterates that, during his imprisonment, he has engaged in programming and work assignments, and has accumulated good-time credit.  See Reply at 8.  D. Wilkerson

argues that, in light of his "relatively low culpability and his behavior while incarcerated, this Court should impose a sentence that assures his immediate release," as he has served over two-thirds of his sentence.  See Reply at 9.  D. Wilkerson also disagrees with the United States that his requested relief would create sentencing disparities in violation of § 3553(a).  See Reply at 9-10. D. Wilkerson contends that the United States "assumes that the government would now charge and a jury would now find that the offense involved 28 grams or more of crack."  Reply at 10. Because that is not necessarily true, D. Wilkerson argues, "any disparity actually would run in the other direction."  Reply at 10.  Instead, D. Wilkerson asserts that denying him relief "for the government's reasons" would "disparately deprive" him of Fifth and Sixth Amendment rights to "have an indictment charge and a jury find the quantity beyond a reasonable doubt, all of which have been provided to post-Fair Sentencing Act defendants."  Reply at 10.  D. Wilkerson then argues that the Court should reduce his term of supervised release.  See Reply at 10.  He notes that Judge Holmes imposed the eight-year mandatory supervised release term, but D. Wilkerson posits that, under the Fair Sentencing Act, his mandatory supervised release term is now six years.  See Reply at 10 (citing 21 U.S.C. § 841(b)(1)(C)).  D. Wilkerson does not request a particular term of supervised release, but asserts that the Court should consider that the statutory term of supervised release is now lower than it was at his sentencing.  See Reply at 10.

Last, D. Wilkerson requests a "de novo resentencing" if the Court "is inclined to deny or limit the imposition of a reduced sentence."  Reply at 11.  D. Wilkerson contends that, under similar circumstances, courts have held that there must be a hearing at which the defendant is present if "a court is considering anything less than exercising its discretion to grant full relief." Reply at 11 (citing United States v. Brown, 879 F.3d 1231, 1237-41 (11th Cir. 2018); United States

v. Faulks, 201 F.3d 208, 210-12 (3d Cir. 2000); United States v. Moree, 928 F.2d 654, 655-56 (1st Cir. 1991)).  D. Wilkerson argues that, according to the First Step Act's § 404, "this is not just a ministerial math exercise, as was the case with § 3582(c)(2) reductions granted pursuant to retroactive guideline amendments, but the power to impose a reduced sentence, including a variance." Reply at 11.  D. Wilkerson disagrees with the United States that United States v. Dillon governs.  See Reply at 11.  D. Wilkerson argues instead that United States v. Dillon addressed sentencing modifications based on retroactive guideline amendments and provided that any reduction must be consistent with applicable policy statements.  See Reply at 12.  D. Wilkerson asserts that, in contrast to United States v. Dillon and § 3582(c), the First Step Act authorizes courts to impose reduced sentences.  See Reply at 12.  D. Wilkerson also contends that rule 43 does not require a different result, because the rule "provides that a defendant 'need not be present when [t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c).'"  Reply at 12 (quoting Fed. R. Crim P. 43(b)(4) (alteration in Reply)).  D. Wilkerson acknowledges that § 3582(c)(1)(B) authorizes sentence reduction as "'expressly permitted by statute or by Rule 35,'" and that the First Step is a statute.  Reply at 12 (quoting 18 U.S.C. § 3582(c)(1)(B)).  D. Wilkerson nonetheless avers that rule 43(b)(4) does not apply to every sentencing reduction pursuant to a statute that § 3582(c)(1)(B) describes, "such as resentencing after direct appeal or on collateral review."  Reply at 12 (citing United States v. Arrous, 320 F.3d 355, 357-60 (2d Cir. 2003)).  "For the same reasons," D. Wilkerson argues that rule 43(b)(4) "does not apply to the imposition of a reduced sentence under Section 404 of the First Step Act."  Reply at 12.  Finally, D. Wilkerson asserts that, if the Court agrees that he is eligible for First Step Act relief, his sentencing range will reduce from a 360-month minimum to a 262-month minimum,

and D. Wilkerson argues that the United States' "approach offers nothing to guide the Court's discretion within this new range." Accordingly, D. Wilkerson requests a de novo resentencing hearing unless the Court grants D. Wilkerson's request for a time-served sentence. See Reply at 12-13.

5.      **The USPO Memo.**

David Mills, Senior United States Probation Officer of the United States Probation Office, filed a Memorandum to assist the Court in assessing D. Wilkerson's First Step Act sentence reduction eligibility. See Memorandum at 1, filed April 8, 2019 (Doc. 602)("USPO Memo."). The USPO says that, based on the 2014 retroactive Guidelines amendment to U.S.S.G. § 2D1.1, D. Wilkerson's base offense would be 24 rather than 30, "based on 44.57 grams of cocaine base." USPO Memo. at 1. The USPO asserts, however, that, based on D. Wilkerson's career offender enhancement, D. Wilkerson's "total offense level is not impacted by the amendment." USPO Memo. at 1. The USPO posits that, when D. Wilkerson was sentenced, his statutory penalties, along with his career offender enhancement, produced an imprisonment range of ten years to life. See USPO Memo. at 1. The USPO contends that, pursuant to U.S.S.G. § 4B1.1, a statutory maximum penalty of life imprisonment results in an offense level of 37, rendering D. Wilkerson ineligible for any reduction. See USPO Memo. at 1.

6.      **The USPO Response.**

D. Wilkerson responds to the USPO Memo. See Response to Probation Memorandum at 1, filed April 15, 2019 (Doc. 605)("USPO Response"). D. Wilkerson reiterates his argument that his Guidelines range must be based on the First Step Act's statutory penalties, "as found by a jury beyond a reasonable doubt." USPO Response at 1. D. Wilkerson cites Apprendi and asserts that

a jury must find any fact that increases a defendant's penalty beyond the prescribed statutory maximum. See USPO Response at 2 (citing Apprendi, 530 U.S. at 490). D. Wilkerson contends that, because the jury found that his offense involved five grams or more of cocaine base, "under the Fair Sentencing Act, the First Step Act, and *Alleyne/Apprendi*, this is the amount for which Mr. Wilkerson may be held accountable." USPO Response at 2.

D. Wilkerson also develops his argument that Alleyne and Apprendi apply by arguing that "[t]his always was and remains the law." USPO Response at 2. D. Wilkerson asserts that Congress never directed courts to use "uncharged judge-found facts by a preponderance to set statutory ranges." USPO Response at 2 (quoting United States v. Buckland, 289 F.3d 558, 567 (9th Cir. 2002)(en banc)("'Congress did not unconstitutionally commit determination of drug quantity to a judge for a finding by a preponderance of the evidence. . . . [T]hat commitment was made by the judiciary, not the legislature.'"(alterations in USPO Response))). D. Wilkerson argues that, if Congress required that only judges may make findings that § 841(b) requires or that these findings need be made only on a preponderance of the evidence, "'then § 841 would create a constitutional problem.'" USPO Response at 2-3 (quoting United States v. Brough, 243 F.3d 1078, 1079 (7th Cir. 2001)). Instead, D. Wilkerson argues that, because § 841(b) is silent as to the procedures for its implementation, it is consistent with Apprendi. See USPO Response at 3 (citing United States v. Cernobyl, 255 F.3d 1215, 1219 (10th Cir. 2001)). D. Wilkerson also argues that "using judge-found facts by a preponderance to increase a statutory range was *always* unconstitutional." USPO Response at 3. D. Wilkerson contends that, when the Supreme Court declares whether a newly found right is retroactive, this pronouncement does not mean that the right did not exist before its announcement. See USPO Response at 3 (citing Danforth v. Minnesota, 552 U.S. 264, 271

(2008)).  D. Wilkerson asserts instead that the new right derives from the Constitution rather than from judicial powers to identify constitutional rights.  See USPO Response at 3.  D. Wilkerson also notes that Apprendi and Alleyne were law when Congress enacted the First Step Act, and D. Wilkerson reasserts that courts presume that Congress intends that its laws comply with the Constitution.  See USPO Response at 4 (citing Rust v. Sullivan, 500 U.S. 173, 191 (1991).  D. Wilkerson accordingly contends that his statutory penalties may depend only on a fact that the Indictment charges and which the jury found beyond a reasonable doubt.  See USPO Response at 4.

D. Wilkerson then argues that the USPO's interpretation contradicts the First Step Act's language, which refers to a defendant's "'offense' and asks whether it is one for which 'statutory penalties' were modified, not to 'relevant conduct.'"  USPO Response at 4 (citing First Step Act § 404(a)).  The term "offense," D. Wilkerson contends, is a term of art with specific legal consequences that are distinct from those consequences attendant to "relevant conduct."  USPO Response at 4.  As an example, D. Wilkerson asserts that a defendant's relevant conduct is not subject to the statutory penalties to which the First Step Acts refers, as relevant conduct is a Guidelines consideration and not a fact that increases the statutory maximum penalty.  See USPO Response at 5 (citing U.S.S.G. § 1B1.3).  D. Wilkerson thus contends that relevant conduct determines the sentence within the statutory range rather than a sentence outside or beyond the statutory range.  See USPO Response at 5 (citing United States v. Harris, 244 F.3d 828, 830 (11th Cir. 2001)).  D. Wilkerson acknowledges that the United States and the USPO may oppose a sentence reduction based on the quantity of cocaine that the PSR identified, but D. Wilkerson asserts that such opposition goes to the Court's discretion and not to D. Wilkerson's statutory

eligibility for relief.  See USPO Response at 6.  D. Wilkerson then reasserts his request that the Court reduce his sentence to time served.  See USPO Response at 6-7.

>    **7**.    **The Motion to Supplement.**

D. Wilkerson filed an unopposed motion to supplement the record.  See Defendant's Unopposed Motion to Supplement Record in Support of Motion for Reduction in Sentence, filed March 2, 2020 (Doc. 609)("Motion to Supplement").  D. Wilkerson provides that he is housed in the "minimum security satellite camp where he continues to work on vocational training and self-improvement." Motion to Supplement at 1.  D. Wilkerson attaches certificates of completion for nine courses that he completed since filing the Reply.  See Motion to Supplement at 1-2.  Those courses include welding, wind energy, hydraulics, and lift truck safety.  See Motion to Supplement at 1-2.

>    **8**.    **The Hearing.**

The Court held a hearing on March 31, 2020.  See Transcript of Hearing at 1:1 (taken March 31, 2020)("Tr.").[2]  The parties first noted that D. Wilkerson was not present, and D. Wilkerson requested that the Court, after hearing his legal arguments, set another sentencing hearing at which D. Wilkerson would be present.  See Tr. at 2:17-25 (McLoughlin).  The Court responded that this approach, which other attorneys in the Federal Public Defender's Office have advanced before the Court, requires an already burdened Court to hold two hearings and write two opinions, where it could otherwise do with one hearing and one opinion.  See Tr. at 3:1-10 (Court).

---

[2]The Court's citations to the hearing transcript refer to the unedited draft transcript. Accordingly, line and page numbers are subject to slight change in the final, edited version.

D. Wilkerson responded that he would waive his appearance at the hearing and proceed with argument. See Tr. at 3:14-16 (McLoughlin).

D. Wilkerson began by noting that, before 2010, the statutory penalties for cocaine base and cocaine powder were immensely disproportionate. See Tr. at 4:6-10 (McLoughlin). D. Wilkerson argued that Congress expressly enacted the Fair Sentencing Act to address this disparity, reducing the crack-cocaine ratio from 100-to-one to eighteen-to-one. See Tr. at 4:10-14 (McLoughlin). D. Wilkerson also noted that the pre-Fair Sentencing Act statutory penalties disproportionately impacted African Americans, and argued that the Fair Sentencing Act and the First Step Act represent Congress' attempts to reduce that disparity. See Tr. at 4:15-20 (McLoughlin).

D. Wilkerson then cited United States v. Paulino, No. CR 03-0274 JAP, 2019 WL 2437214 (D.N.M. June 11, 2019)(Parker, S.J.), and argued that, in that case, the Honorable James Parker, Senior United States District Judge for the United States District Court for the District of New Mexico, concluded that First Step Act resentencing depends on the statute under which the defendant was convicted and not on the defendant's actual conduct. See Tr. at 8:5-11 (McLoughlin). D. Wilkerson contended that the United States "provides no argument why Apprendi would not apply in this context." Tr. at 8:20-21 (McLoughlin). D. Wilkerson also noted that the Court, in United States v. Lewis, __ F. Supp. 3d __, 2020 WL 128580 (D.N.M. Jan. 10, 2020)(Browning, J.), concluded that 18 U.S.C. § 3582(c)(1)(b), and not 18 U.S.C. § 3582(c)(2), governs First Step Act motions, and so D. Wilkerson argued that United States v. Dillon does not apply. See Tr. at 8:21-25 (McLoughlin). D. Wilkerson contends that the United States and the USPO's position relies on an assumption that, had the United States prosecuted D. Wilkerson

under a Fair Sentencing Act penalty regime, the United States would have proven that D. Wilkerson was responsible for more than twenty-eight grams of cocaine base. See Tr. at 9:1-3 (McLoughlin).

D. Wilkerson then noted that Congressional policy behind the First Step Act and the § 3553(a) factors supports D. Wilkerson's requested relief. See Tr. at 9:9-15 (McLoughlin). D. Wilkerson argued that his age, offense conduct, and post-offense rehabilitation suggest a low risk of recidivism and demonstrate that reducing D. Wilkerson's sentence to time served will further the § 3553(a) factors. See Tr. at 9:15-17 (McLoughlin). On this point, D. Wilkerson cited United States v. Jackson, No. CR 06-1795 RB, 2020 WL 553863 (D.N.M. Feb. 4, 2020)(Brack, J.), and D. Wilkerson argued that, in that case, the Honorable Robert Brack, Senior United States District Judge for the United States District Court for the District of New Mexico, pursuant to the First Step Act, reduced a career offender's sentence from life imprisonment to 200 months. See Tr. at 9:18-20 (McLoughlin). D. Wilkerson asserted that Judge Brack relied on the § 3553(a) factors in reducing the defendant's sentence, and D. Wilkerson contended that his circumstances similarly demonstrated that a reduction would further the § 3553(a) factors. See Tr. at 9:20-23 (McLoughlin). D. Wilkerson noted that, in his nearly twenty years in prison, he has accumulated the maximum allowable good time credit -- fifty-four days for each year in prison. See Tr. at 9:23-10:2 (McLoughlin). D. Wilkerson also pointed to his Individualized Reentry Plan, filed March 25, 2019 (Doc. 601-1), which D. Wilkerson noted shows that he has attended a range of classes, including yoga, parenting, anger management, horticulture and Spanish, see Tr. at 10:3-6 (McLoughlin). D. Wilkerson asserted that "he's been taking advantage of any programming and work projects available to him in an effort to increase his career and vocational prospects and from

his reentry back into society." Tr. at 10:5-8 (McLoughlin). Finally, D. Wilkerson noted that he has long mentored other inmates, and helped them draft and submit legal briefs and petitions, and that he wishes to be a paralegal upon release from prison. See Tr. at 10:8-20 (McLoughlin).

D. Wilkerson then agreed with the Court that the primary disagreement between D. Wilkerson and the United States is Apprendi's applicability. See Tr. at 11:10:14 (Court); id., at 10:22-25 (McLoughlin). D. Wilkerson acknowledged that the PSR's conclusion that he was responsible for forty-four grams of cocaine base is relevant to the Court's decision, but D. Wilkerson argued that the PSR's conclusion is irrelevant to his First Step Act eligibility. See Tr. at 12:7-12 (McLoughlin). The Court responded that it "puts the Court and the government in a difficult position to now say that Apprendi applies, but then all of a sudden we say they can't have a jury trial." Tr. at 13:4-8 (Court). D. Wilkerson responded that, with the Fair Sentencing Act and the First Step Act, Congress intends to remedy what it perceives as past injustices by providing a new statutory framework for offenses committed under a prior sentencing regime. See Tr. at 14:2-5 (McLoughlin).

The United States responded and argued that "the reality is that the defendant would not qualify for a reduced sentence if he were charged now." Tr. at 15:2-3 (Braun). The United States also asserted that Apprendi applies to factfinding that increase sentences, whereas here the issue is whether D. Wilkerson qualifies for a sentence reduction and, if so, whether the Court should exercise its discretion to reduce D. Wilkerson's sentence, and so Apprendi does not apply. See Tr. at 15:15-20 (Braun). The Court asked the United States whether a conclusion that D. Wilkerson is ineligible for First Step Act relief would necessarily entail the Court making a factual finding as to the amount of cocaine involved in D. Wilkerson's offense. See Tr. at 16:7-10 (Court). The

United States agreed with the Court, but asserted that such fact-finding does not violate Apprendi, because the Court would not be increasing D. Wilkerson's sentence.  See Tr. at 16:10-13 (Braun). The United States did not assert that Apprendi never applies to resentencing, but argued instead that "there is nothing unconstitutional or in violation of Apprendi" for the Court to look at the offense's actual facts of the case to "determine whether there is a covered offense [and] whether the defendant qualifies for a reduced sentence."  Tr. at 18:15-20 (Braun).  The Court opined that the logical extension of the United States' argument is that Apprendi never applies to resentencing. See Tr. at 18:20-23 (Court).  The Court said that it was troubled that, when the Supreme Court of the United States decided Apprendi and Alleyne, "they weren't thinking about this moment where Congress comes in and passes the First Step Act," but those cases' language suggests that they apply to a First Step Act resentencing.  Tr. at 19:12-21 (Court).  The Court then asked the United States whether any district courts had confronted the issue and agreed with the United States' position that the PSR's drug-quantity determination, and not the jury's verdict, determines First Step Act eligibility.  See Tr. at 20:7-9 (Court)  The United States responded that it believed that the Honorable William P. Johnson, Chief United States District Judge for the United States District Court for the District of New Mexico, had in one case, but the United States could not provide the citation for that case.  See 20:10-12 (Braun).

The Court asked the same question of D. Wilkerson, see Tr. at 20:16-18 (Court), who replied with several citations to cases that support his position.  See Tr. at 20:21-21:5 (McLoughlin)(citing United States v. Mitchell, No. 06 CR 723-2, 2020 WL 1139245 (N.D. Ill. March 9, 2020)(Leinenweber, J.); United States v. Paulino, 2019 WL 2437214; First Step Act § 404).  D. Wilkerson also contended that the First Step Act's use of the word "impose" directs

the Court "to consider more holistically the case and the defendant's conduct," and D. Wilkerson contended that Congress therefore "intended for the Court to be able to go back and pretend that this was the law at the time" of D. Wilkerson's original sentencing.  Tr. at 21:25-22:4 (McLoughlin).  D. Wilkerson argued that, to the extent that relying solely on the statutory offense of D. Wilkerson's conviction "is in any way unfair to the Government," the Court may rely on the PSR's conclusion in determining D. Wilkerson's sentence within the amended statutory range.  Tr. at 22:9-13 (McLoughlin).

## RELEVANT LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the

proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[3] Guidelines sentence. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough, 552 U.S. at 90-91.

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first

---

[3]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory. Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should

- 46 -

begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24, (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

> task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially different from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted. See United States v. Almendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.). On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi, the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution limits this discretion and the

Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi, stating that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis and citations omitted). In United States v. Booker, however, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of Apprendi's requirement." (alterations and internal quotations marks omitted)). More recently, the Supreme Court held that the requirements in Apprendi apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker did not change the district court's enhancement findings analysis. See United States v. Magallanez, 408 F.3d at 684-85. United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute and to distribute, methamphetamine. See 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing,

however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines. See 408 F.3d at 682. The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months. See 408 F.3d at 682-83. On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." 408 F.3d at 684. Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[4] "[T]he application of an enhancement . . . does not implicate

---

[4]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance

the Supreme Court's holding in Apprendi v. New Jersey."  United States v. Reyes-Vencomo, No.

CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.).  The Tenth

Circuit applies Apprendi's requirement that a fact be submitted to a jury only where the fact would

increase a defendant's sentence "above the statutory maximum permitted by the statute of

conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005).  Accord United States v.

Ray, 704 F.3d at 1314.  A defendant may assert an error under Apprendi only where the fact at

issue increased his sentence beyond the statutory maximum.  See United States v. O'Flanagan,

339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error

under Apprendi, because "his sentence does not exceed the statutory maximum"); United States v.

Hendrickson, 2014 WL 6679446, at *6 (10th Cir. 2014)[5](holding that, after Alleyne, "[i]t is well-

---

warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation).  See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

[5]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have
> generally determined that citation to unpublished opinions is not favored.

established that sentencing factors need not be charged in an indictment and need only be proved

to the sentencing judge by a preponderance of the evidence").  The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in <u>Alleyne v.</u>
> <u>United States</u>, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from <u>Apprendi v.</u>
> <u>New Jersey</u>, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum
> sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to
> cover facts that increase the mandatory minimum sentence, as well as the maximum
> sentence, it does not prohibit district judges from continuing to find advisory
> sentencing factors by a preponderance of the evidence.  <u>See</u> [<u>United States v.</u>
> <u>Sangiovanni</u>,] 2014 WL 4347131, at *22-26 [(D.N.M. 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov.

3, 2014)(Browning, J.).

## <u>LAW REGARDING THE FIRST STEP ACT</u>

A federal district court may modify a defendant's sentence where Congress has specifically

authorized it to do so.  <u>See</u> 18 U.S.C. § 3582(c)(1)(B)(permitting a court to modify an imposed

term of imprisonment "to the extent otherwise expressly permitted by statute or by Rule 35 of the

Federal Rules of Criminal Procedure");[6] <u>United States v. Blackwell</u>, 81 F.3d 945, 947 (10th Cir.

---

However, if an unpublished opinion or order and judgment has persuasive value
with respect to a material issue in a case and would assist the court in its disposition,
we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes <u>United States</u>
<u>v. Hendrickson</u>, and <u>United States v. Leroy</u>, 298 F. App'x 711 (10th Cir. 2008), have persuasive
value with respect to a material issue, and will assist the Court in its disposition of this
Memorandum Opinion and Order.

[6]Rule 35 of the Federal Rules of Criminal Procedure outlines the circumstances under
which a court may correct or reduce a sentence.  <u>See</u> Fed. R. Crim. P. 35.  Rule 35(a) permits a
court, within fourteen days after sentencing, to correct a sentence "that resulted from arithmetical,
technical, or other clear error."  Fed. R. Crim. P. 35(a).  Rule 35(b)(1) permits a court, upon the
government's motion made within one year of sentencing, to reduce a sentence if the defendant,
"after sentencing, provided substantial assistance in investigating or prosecuting another person."
Fed. R. Crim. P. 35(b).  Rule 35(b)(2) permits the court to reduce a defendant's sentence upon the

1996)("A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."). See also United States v. Hardage, 58 F.3d 569, 574 (10th Cir. 1995)("[W]ith the exception of certain powers which truly fit the rubric of 'inherent power.' . . . federal courts cannot act in the absence of statutory authority."); United States v. Caterino, 29 F.3d 1390, 1394 (9th Cir. 1994)("The authority to change a sentence must derive from some federal statutory authority.").

On December 21, 2018, the President signed the First Step Act into law. See First Step Act. The First Step Act's § 404 makes the Fair Sentencing Act's sections 2 and 3 retroactive. See First Step Act § 404. The full text of the First Step Act's § 404 is as follows:

### SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a)    DEFINITION OF COVERED OFFENSE. -- In this section, the term "covered offense" means a violation of a Federal Criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

(b)    DEFENDANTS PREVIOUSLY SENTENCED. -- A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c)    LIMITATIONS. -- No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously

---

government's motion made more than one year after sentencing if the defendant's substantial assistance involved information either not known to the defendant until one year or more after sentencing, information which the defendant provided to the government within one year after sentencing, but which did not become useful until more than one year after sentencing, or information the usefulness of which the defendant could not have reasonably anticipated until more than one year after sentencing, and which the defendant promptly provided to the government after its usefulness became reasonably apparent to the defendant. See Fed. R. Crim. P. 35(b)(2)(A)-(C).

reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404. The full text of the Fair Sentencing Act's sections 2 and 3 is as follows:

### SEC. 2.  COCAINE SENTENCING DISPARITY REDUCTION.

(a)     CSA. -- Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended --

<< 21 USCA § 841 >>

    (1)     in subparagraph A(iii), by striking "50 grams" and inserting "280 grams"; and

<< 21 USCA § 841 >>

    (2)     in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams".

(b)     IMPORT AND EXPORT ACT. -- Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended --

<< 21 USCA § 960 >>

    (1)     in paragraph (1)(C), by striking "50 grams" and inserting "280 grams"; and

<< 21 USCA § 960 >>

    (2)     in paragraph (2)(C), by striking "5 grams" and inserting "28 grams".

<< 21 USCA § 844 >>

### SEC. 3.  ELIMINATION OF MANDATORY MINIMUM SENTENCE FOR SIMPLE POSSESSION.

Section 404(a) of the Controlled Substances Act (21 U.S.C. 844(a)) is amended by striking the sentence beginning "Notwithstanding the preceding sentence,".

Fair Sentencing Act §§ 2-3.

Section 404 is the only First Step Act provision that applies retroactively to already sentenced defendants. See First Step Act § 404. See also United States v. Gonzalez-Oseguera, Crim. No. 06-00593 HG-01, 2019 WL 1270916, at *1 (D. Haw. March 19, 2019)(Gillmor, J.)(stating that "[t]here are a number of reforms in the First Step Act, but Section 404 is the only provision that applies retroactively to defendants who have already been sentenced"). Section 404 permits a federal district court to resentence a defendant based on the Fair Sentencing Act's revised statutory penalties for crack cocaine offenses. See First Step Act § 404. To be eligible for relief under the First Step Act's § 404, a defendant must have been convicted and sentenced for a covered offense, as defined in the First Step Act's § 404(a). See First Step Act § 404(a). To be convicted of a covered offense, a defendant (i) must have been convicted for violating a federal criminal statute, for which the Fair Sentencing Act's §§ 2-3's modified the penalties; and (ii) have committed that offense before August 3, 2010. See First Step Act § 404(a). See also United States v. Gonzalez-Oseguera, 2019 WL 1270916, at *2 (stating that defendant was not convicted of a covered offense, because defendant was convicted of an offense involving methamphetamine, for which the Fair Sentencing Act's §§ 2-3 did not modify the statutory penalties); United States v. Drayton, CRIMINAL ACTION No. 10-20018-01-KHV, 2019 WL 464872, at *2 (D. Kan. Feb. 6, 2019)(Vratil, J.)(concluding that the court lacked jurisdiction to reduce the defendant's sentence under the First Step Act, where the defendant was convicted of an offense involving powder cocaine and marijuana). The statute of conviction, not the defendant's conduct, controls First Step Act eligibility. See, e.g., United States v. Davis, 423 F. Supp. 3d 13, 17 (W.D.N.Y. 2019)(Skretny, J.)(rejecting the government's argument that a defendant was not First Step Act eligible, because, if the Fair Sentencing Act had been in place

when the offense was convicted, the indictment would have alleged a greater quantity of drugs as required to trigger the penalties, because "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act").

Although a defendant may be eligible for First Step Act relief, whether that relief is warranted is a separate inquiry.  See First Step Act § 404(c) (stating that "nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section").  The First Step Act is silent regarding what a court may consider in determining whether resentencing of a First Step Act-eligible defendant is warranted.  See First Step Act § 404.  Federal district courts are split regarding whether a court reconsidering a sentence under the First Step Act may consider only whether a defendant's Guidelines numbers change or whether the court may also consider anew the 18 U.S.C. § 3553(a) factors.  Compare, e.g., United States v. Davis, 423 F. Supp. 3d at 18, with United States v. Tucker, 356 F. Supp. 3d 808, 810 (S.D. Iowa Jan. 23, 2019)(Pratt, J.). Several federal district courts that have thus far addressed First Step Act motions have concluded that a First Step Act resentencing is like an 18 U.S.C. § 3582(c) proceeding, and accordingly that: (i) the First Step Act does not permit plenary resentencing; and (ii) the First Step Act only "contemplates a recalculation of a defendant's Guidelines numbers under the Fair Sentencing Act and a possible sentencing reduction consistent therewith, if warranted."  United States v. Davis, 423 F. Supp. 3d at 16.  See United States v. Sampson, 360 F. Supp. 3d 168, 171 (W.D.N.Y. 2019)(Larimer, J.)(stating that "a full resentencing is neither required nor called for" by the First Step Act); United States v. Potts, CASE NO. 2:98-cr-14010-ROSENBERG, 2019 WL 1059837, at *2 (S.D. Fla. March 6, 2019)(Rosenberg, J.)(concluding that all other determinations -- such as the length of supervised release assigned -- made at the time of sentencing other than those relating

to recalculation of imprisonment time based on the Fair Sentencing Act's sections 2 and 3, must remain unchanged); United States v. Logan, CRIMINAL ACTION No. 07-20090-01-KHV, 2019 WL 498519, at *1 (D. Kan. Feb. 8, 2019)(Vratil, J.)(same).[7]

The Court agrees with the majority of district courts to consider the issue, that 18 U.S.C. § 3582(c)(1)(B) "is the appropriate vehicle for sentence reductions sought under the First Step Act." United States v. McKinney, 382 F. Supp. 3d 1163, 1165 (D. Kan. 2019)(Lungstrum, J.). Section 3582(c)(1)(B) permits modification of an imposed imprisonment term to the extent "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). The Court concludes that the First Step Act should be read together with 18 U.S.C. § 3582, which overarchingly governs the finality of criminal sentences, and the Court agrees with the reasoning that United States v. Shelton states:

> Section 404 must be read together with other existing statutes -- including § 3582(c). See, e.g., United States v. Fausto, 484 U.S. 439, 452-53 (1988)(courts must carry out the "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination."). Significantly, § 3582 provides an overarching provision that governs the finality of criminal sentences. See, e.g.,

---

[7]The First Step Act does not mandate the defendant's presence at a hearing. See First Step Act § 404. Several federal district courts have stated that 18 U.S.C. § 3582(c)(1)(B) governs First Step Act motions. See, e.g., United States v. Delaney, 2019 WL 861418, at *1 ("Modifications of sentences under the First Step Act are governed by 18 U.S.C. § 3582(c)(1)(B) . . . ."); United States v. Fountain, Criminal Case No. 1:09-cr-00013-MR-WCM-9, 2019 WL 637715, at *2 (W.D.N.C. Feb. 14, 2019)(treating defendant's Motion for Amended Judgement under the First Step Act as an 18 U.S.C. § 3582(c)(1)(B) motion; United States v. Copple, Case No. 17-cr-40011-JPG-009, 2019 WL 486440, at *1 (S.D. Ill. Feb. 7, 2019)(construing First Step Act motion under 18 U.S.C. § 3582(c)(1)(B)). Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present for an 18 U.S.C. § 3582(c)(1)(B) resentencing. See Fed. R. Crim. P. 43(b)(4). Accordingly, federal district courts reviewing First Step Act Motions generally have concluded that a First Step Act defendant is not entitled to a hearing. See, e.g., United States v. Davis, 423 F. Supp. 3d at 16 (concluding that Davis' presence was not required at his First Step Act resentencing). The Court concludes that, pursuant to rule 43(b)(4) of the Federal Rules of Civil Procedure and 18 U.S.C. §3582(c)(1), a First Step Act defendant is not entitled to a hearing.

*United States v. Goodwyn*, 596 F.3d 233, 245 (4th Cir. 2010)("[T]he law closely guards the finality of criminal sentences," and "Section 3582," which governs the imposition of federal prison sentences, embraces this principle.").

Section 3582(c)(1)(B) provides a straightforward way to implement the retroactive changes in the First Step Act because it permits a modification of a sentence when "expressly permitted by statute," as the First Step Act does here. Other district courts analyzing First Step Act motions for relief agree. *See*, *e.g.*, *United States v. Davis*, No. 07-cr-245S, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Potts*, No. 2:98-cr-14010, 2019 WL 1059837, at *2-3 (S.D. Fl. Mar. 6, 2019); *United States v. Delaney*, No. 6:08-cr-00012, 2019 WL 861418, at *1 (W.D. Va. Feb. 22, 2019): *United States v. Fountain*, No. 1:09-cv-00013, 2019 WL 637715, at *2 (W.D.N.C. Feb. 14, 2019): *United States v. Jackson*, No. 5:03-cr-30093, 2019 WL 613500, at *1 (W.D. Va. Feb. 13, 2019); *United States v. Copple*, No. 17-cr-40011, 2019 WL 486440, at *2 (S.D. Ill. Feb. 7, 2019); *United States v. Drayton*, Crim. No. 10-20018, 2019 WL 464872, at *2 (D. Kan. Feb. 6, 2019); *United States v. Kambler*, No. 09-cv-40050, 2019 WL 399935, at *2 (S.D. Ill. Jan. 31, 2019).

Section 3582(c)(1)(B) also fits the structure of § 404 of the First Step Act. Section 404(b) of the First Step Act and § 3582(c) both provide that multiple actors -- including a district court, the Director of the Bureau of Prisons, the Government, and defendants -- may initiate requests for sentence reductions. Statutory provisions in § 3582(c) cover: motions filed by the Government (such as motions under Fed. R. Crim. P. 35 addressed in § 3582(c)(1)(B); motions filed by the Director of the Bureau of Prisons (such as motions addressed in § 3582(c)(1)(A) and (c)(2); motions filed by defendants (such as motions addressed in § 3582(c)(1)(A) and (c)(2)); and proceedings initiated by the sentencing court (such as motions addressed in § 3582(c)(2)).

. . . .

In short, § 3582(c)(1)(B) is the appropriate mechanism for granting relief under § 404 of the First Step Act.

2019 WL 1598921, at *2. Even courts that have construed the First Step Act's § 404 as a freestanding provision authorizing sentence reduction have noted 18 U.S.C. § 3582(c)(1)(B) as "complementary authority." United States v. Dodd, 372 F. Supp. 3d 795, 797 n.2 (S.D. Iowa 2019)(Pratt, J.). Section 3582(c)(1)(B) "does not delineate the scope of what the district court should consider when resentencing is authorized by another provision," nor does it place "any substantive limit on the district court's ability to grant a modification." United States v. Rose, 379

F. Supp. 3d 223, 232 (S.D.N.Y. 2019)(Caproni, J.).  The Court concludes that nothing in 18 U.S.C. § 3582(c)(1)(B) precludes it from "considering anew the sentencing factors enumerated in § 3553(a)."  United States v. Rose, 379 F. Supp. 3d at 233.

## ANALYSIS

The Court will grant D. Wilkerson's Motion.  The Court first concludes that D. Wilkerson is not entitled to plenary resentencing or a hearing at which his presence is required.  Second, the Court concludes that D. Wilkerson is eligible for relief under the First Step Act.  Specifically, the Court agrees with D. Wilkerson that the statute of conviction, not the defendant's conduct, controls First Step Act eligibility.  The Court disagrees with D. Wilkerson, however, that Apprendi dictates this result, because the statute itself requires such an analysis without resort to deciding constitutional questions.  Third, the Court concludes that, under the Fair Sentencing Act and current Guidelines, D. Wilkerson's new Guidelines imprisonment range is 262-327 months. Fourth, the Court applies the § 3553(a) factors to conclude that a 3-level downward variance, resulting in a sentence of time serviced, is warranted.   Accordingly, the Court reduces D. Wilkerson's sentence to time served.

## I.   **D. WILKERSON IS NOT ENTITLED TO A PLENARY RESENTENCING**.

The Court first concludes that D. Wilkerson is not entitled to a plenary resentencing. D. Wilkerson contends that the First Step Act's § 404 "is not based on § 3582(c)(2), and it is not a mere sentencing reduction or modification.  Instead, it authorizes courts to do something entirely different, i.e., 'impose' a reduced sentence, something not authorized by § 3582(c)(2)."  Reply at 12.  D. Wilkerson thus requests a hearing at which he is present to allocute.  See, e.g., Tr. at 2:16-25 (McLoughlin); Reply at 12.  The United States argues that, under rule 43, the First Step Act,

and § 3582(c)(1)(B), a defendant's presence is not necessary at a hearing to correct or reduce a sentence pursuant to § 3582(c).  See Response at 9-10 (citing Fed. R. Crim. P. 35, 43).  The Court concludes that D. Wilkerson's Motion properly falls under § 3582(c)(1)(B), which permits modification of a sentence to the extent that a statute expressly permits.  See 18 U.S.C. § 3582(c)(1)(B).  The First Step Act allows, but does not require, a court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed."  First Step Act, § 404(b).  The First Step Act thus allows courts to recalculate a defendant's sentence, but nowhere does it expressly grant authority to conduct the plenary resentencing that D. Wilkerson requests.  See, e.g., United States v. Davis, 423 F. Supp. 3d at 16.  The First Step Act's text indicates that it permits a court, under circumstances which the Act delineates, to reduce a previously imposed sentence, rather than to impose a sentence on a blank slate.  See First Step Act § 404(c) ("No court shall entertain a motion made under this section to *reduce a sentence* if the sentence was previously imposed or previously reduced . . . . (emphasis added)).  Further, because courts resolve First Step Act motions under § 3582(c), the Court need not require D. Wilkerson's presence.  See Fed. R. Crim. P. 43(b)(4) (providing that a defendant is not entitled to be present at a hearing pursuant to § 3582(c)).  Accordingly, D. Wilkerson is not entitled to a plenary resentencing, and the Court need not hold a hearing at which D. Wilkerson is present.

## II.   D. WILKERSON IS ELIGIBLE FOR RELIEF UNDER THE FIRST STEP ACT.

The parties' main disagreement focuses on D. Wilkerson's eligibility for First Step Act relief.  The United States contends that, because D. Wilkerson's actual offense conduct -- as the PSR reflects and to which D. Wilkerson did not object at his initial sentencing -- involved forty-

four grams of cocaine base, and because the Fair Sentencing Act did not alter statutory penalties for an offense involving forty-four grams of cocaine base, D. Wilkerson is ineligible for relief. See Response at 4-6. D. Wilkerson strenuously objects that it is not the PSR's factual finding that governs his eligibility for relief but rather the facts as the jury found them, because Apprendi prohibits, when sentencing a defendant, reliance on facts other than those proved to a jury beyond a reasonable doubt or those that a defendant admits in a plea agreement. See Motion Brief at 3-4; Reply at 4-6; USPO Response at 3-6. The United States notes that Apprendi and Alleyne were not made retroactive, and so those cases have no bearing on D. Wilkerson's eligibility for relief. See Response at 6. The United States further argues that limiting the Court's eligibility inquiry to the drug quantity that the jury found, and not considering the actual amount as the PSR found, gives D. Wilkerson a windfall, because, were the United States to indict D. Wilkerson today, it would charge him with the greater statutory offense as befits the actual amount of drugs his offense involved. See Response at 8.

Both parties miss the mark. Apprendi need not enter the equation. Apprendi and Alleyne "prohibit judicial findings that increase the statutory penalty for a crime." United States v. Banuelos, No. 02-CR-084 WJ, 2019 WL 2191788, at *2 (D.N.M. May 21, 2019)(Johnson, C.J.). The First Step does not, however, permit courts to increase statutory penalties pursuant to the Act's retroactivity provision. See, e.g., United States v. Willis, 417 F. Supp. 3d 569, 589 (E.D. Pa. 2019)(Kearney, J.). A defendant may assert an error under Apprendi only where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi, because "his sentence does not exceed the statutory maximum"). Apprendi and Alleyne thus do

not apply to First Step Act motions, because a court's decision not to reduce a sentence is not equivalent to an increase in the defendant's statutory penalty.

The United States' proposed interpretation also contradicts Congress' intent.  Congress enacted the First Step Act "to correct earlier statutes' significant disparities" in the treatment of crack cocaine and powder cocaine.  United States v. Wirsing, 943 F.3d 175, 176-77 (4th Cir. 2019), as amended (Nov. 21, 2019).  The United States' position would significantly limit the First Step Act's application to a considerable portion of otherwise eligible defendants.  Further, the United States effectively requests that the Court use a "prosecutor-friendly-way-back machine to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect."  United States v. Pierre, 332 F. Supp. 3d 17, 22 (D.R.I. 2019)(Smith, C.J.).  The Court cannot say with confidence that the United States would have prosecuted and convicted D. Wilkerson for a separate violation were the Fair Sentencing Act in effect, particularly because the jury convicted D. Wilkerson only of a lesser included offense.  See PSR at 1.  Moreover, the First Step Act leaves sentencing reduction in the courts' discretion.  See First Step Act § 404(a). It thus makes sense that Congress intended to render eligible a class of defendants for whom the courts evaluate a range of factors in exercising that discretion.  Finally, to the extent that § 404(a) is ambiguous, the Court should resolve that ambiguity in defendants' favor.  See Leocal v. Ashcroft, 543 U.S. 1, 11 n.8 (2004)("Even if § 16 lacked clarity . . . we would be constrained to interpret any ambiguity in the statute in petitioner's favor.").

D. Wilkerson is correct that the Court need not make a quantity determination when it considers a defendant's eligibility for relief under the First Step Act.  That inquiry is relevant to whether the Court ultimately decides to grant such relief, but it has no bearing on the application

of the First Step Act's § 404.  The Court need not rely on <u>Apprendi</u> to reach this result, although the Court notes that other courts have done so.  <u>See</u>, <u>e.g.</u>, <u>United States v. Stanback</u>, 377 F. Supp. 3d 618, 623 (W.D. Va. 2019)(Urbanski, J.); <u>United States v. Dodd</u>, 372 F. Supp. 3d 795, 798 (S.D. Iowa 2019)(Pratt, J.).  Instead, the First Step Act determines eligibility based on a categorical inquiry into the defendant's conviction: whether it was a "covered offense."  First Step Act § 404(b).  A "covered offense" is an offense for which the Fair Sentencing Act modifies penalties, and includes any cocaine base offense under § 841(b)(1)(A) or (B).  First Step Act § 404(b). "Under the plain language of the Act, whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated.  If that statute is one for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act, it is a 'covered offense.'" <u>United States v. Davis</u>, 423 F. Supp. 3d at 15 (quoting First Step Act § 404(b)).  "Eligibility turns entirely on the categorical nature of the prior conviction.  All other issues, including the proper quantity determination, are a part of a reviewing court's discretionary call on whether to modify an eligible defendant's sentence."  <u>United States v. Boulding</u>, 379 F. Supp. 3d 646, 652 (W.D. Mich. 2019)(Jonker, C.J.).  Accordingly, D. Wilkerson is correct that his eligibility for First Step Act relief depends on the statute that the jury concluded he violated and does not depend on the cocaine-base quantity that the PSR found.

Under this framework, D. Wilkerson is eligible for First Step Act relief.  D. Wilkerson was tried before a jury on two counts: (i) conspiracy to possess with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and in violation of 21 U.S.C. § 846; and (ii) aiding and abetting the possession with intent to distribute five grams or more of a substance containing a detectable amount of cocaine base in violation of § 841(a)(1) and

(b)(1)(B).  See PSR ¶ 5, at 4.  The jury found Wilkerson guilty on the second charge, aiding and abetting the possession with intent to distribute five grams or more of cocaine base.  See PSR ¶ 5, at 4.  The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010."  First Step Act § 404(a).  Section 2 of the Fair Sentencing Act modified the statutory penalties for certain violations of the Controlled Substances Act, 21 U.S.C. 841(b).  See Pub. L. No. 111-220, 124 Stat. 2372 (2010).  The Fair Sentencing Act's § 2 changed the penalty structure for cocaine-base offenses:

> Section 841(b)(1)(C) now provides for a sentencing range of up to 20 years if the offense involved less than 28 grams or an unspecified amount of crack cocaine;

> Section 841(b)(1)(B)(iii) now provides for a sentencing range of 5 to 40 years if the offense involved "28 grams or more" but less than 280 grams of crack cocaine . . . .

First Step Act § 2.  See 18 U.S.C. § 841(b) (2010).  The First Step Act thus covers D. Wilkerson's offense, because Fair Sentencing Act's § 2 "modified" the "statutory penalties" under § 841(b) for § 841(a) "violation[s]" that involved crack cocaine, and he committed that offense before the Fair Sentencing Act's 2010 enactment.  First Step Act § 404(a)-(b).  Additionally, § 404's procedural bars do not apply to D. Wilkerson.  Although he has attacked his sentence and conviction several times, both on direct appeal and in collateral proceedings, see supra at 3-6, no court has reduced his sentence pursuant to the Fair Sentencing Act, and D. Wilkerson has not previously asked for First Step Act relief, see First Step Act § 404(b).

**III.**   **D. WILKERSON'S CURRENT GUIDELINES RANGE IS 262-327 MONTHS.**

Next, the Court compares the current sentencing regime to that in place when D. Wilkerson was initially sentenced.  See United States v. Boulding, 379 F. Supp. 3d at 654.  In 2001, the statutory penalty for violating § 841(b)(1)(B)(iii) was  ten years to life imprisonment.  See 21 U.S.C. § 841(b)(1)(B)(iii) (2001).  D. Wilkerson's prior convictions for cocaine trafficking and voluntary manslaughter meant that he met § 4B1.1's career-offender criteria.  See PSR ¶¶ 89-90, at 25-26.  Accordingly, D. Wilkerson's criminal history category was VI and his offense level was 37 based upon the statutory maximum sentence of life imprisonment.  See PSR ¶¶ 64, 90, at 21, 26.

Under the current statutory regime, D. Wilkerson's statutory penalty is 0 to 30 years.  See 18 U.S.C. § 841(b)(1)(C).  The 30-year maximum, along with D. Wilkerson's career criminal status, results in a total offense level of 34.  See U.S.S.G. § 4B1.(b)(2).  D. Wilkerson's Guidelines range is thus  262 to 327 months imprisonment.

**IV.**   **THE 3553(a) FACTORS COUNSEL RELIEF AND THE COURT WILL VARY FROM THE GUIDELINES RANGE BY ONE LEVEL.**

That a defendant is First Step Act-eligible does not necessitate reducing the defendant's sentence.  See First Step Act § 404(c).  The Section § 3553(a) factors guide the Court in determining whether -- and if so, by how much -- the Court should reduce D. Wilkerson's sentence below 262 months -- the low end of the current advisory Guidelines range.  See Dillon v. United States, 560 U.S. at 827.  The Court notes that Judge Holmes sentenced D. Wilkerson to the lowest possible sentence under then-current sentencing rules -- 360 months.  See Motion Brief at 2-3. D. Wilkerson now requests that the Court reduce his sentence to time served -- 239 months.  See Motion Brief at 1.

A sentencing judge, in considering the § 3553(a) factors, must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a).[8]  The Court has carefully considered the Guidelines, but,

---

[8]Section 3553(a) counsels the sentencing judge to consider:

**(1)**     the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)**     the need for the sentence imposed --

    **(A)**     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    **(B)**     to afford adequate deterrence to criminal conduct;

    **(C)**     to protect the public from further crimes of the defendant; and

    **(D)**     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)**     the kinds of sentences available;

**(4)**     the kinds of sentence and the sentencing range established for --

    **(A)**     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --

        **(i)**     issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        **(ii)**     that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

in arriving at its sentence, has taken account not only of the Guidelines, but also of the Guidelines'

other sentencing goals.  Specifically, the Court has considered the Guidelines' sentencing range

established for the applicable category of offense committed by the applicable category of

defendant.  The Court has identified several factors that put downward pressure, and several that

put upward pressure on the sentence.  Some of these factors overlap, and some go on both sides of

the ledger.

---

     **(B)**     In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

   **(5)**     any pertinent policy statement --

     **(A)**     issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

     **(B)**     that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

   **(6)**     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

   **(7)**     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (bold in original).

The Court has identified fourteen factors that put downward pressure on D. Wilkerson's sentence to keep it within the Guidelines range. First, D. Wilkerson has remained in close contact with his children. The Court should strive not to lock him up more than necessary, because his children may need him, and studies within the state prison system in the southern part of the state show that fathers who stay in contact with their children while they are in custody have a lower recidivism rate. See, e.g., R. Romo, "Prison Program Will Expand, Father Helped in Southern Facility," Albuquerque Journal, July 7, 2004, at B3 ("When fathers who are incarcerated are connected to their children and their families, the inmates' chances of coming back [to prison] decrease."). Second, one of the factors that almost always puts downward pressure is the need for the sentence to provide just punishment. D. Wilkerson was convicted of aiding and abetting, and he was not the enterprise's mastermind or manager. See PSR ¶ 45, at 18. Third, one of the factors that almost always puts downward pressure is the need for the punishment to promote respect for the law, i.e., a sentence that the community and the bar do not regard as showing that the Court missed the mark. D. Wilkerson has already served nearly twenty years for aiding and abetting a drug offense. Fourth, D. Wilkerson faces many challenges, but the Court uses, and substitutes for incarceration, supervised release to address many of the issues that got D. Wilkerson to this point, especially his choice of friends. Fifth, while the Court's task, as a district judge, is not just to arrive at a reasonable sentence, but to calculate a sentence that fairly, effectively, and fully promotes the § 3553(a) factors, see United States v. Roybal, 188 F. Supp. 3d at 1220; United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section § 3553(a)(2)." (citation omitted)).

The Court is always mindful that the defendant, the Tenth Circuit, and the public will ultimately review the sentence for reasonableness; that perception often -- as in this case -- puts downward pressure on the sentence. Sixth, what reasonableness for a district judge means is that the sentence is not greater than necessary to promote § 3553(a)'s goals. Seventh, D. Wilkerson's post-offense actions put downward pressure on the sentence. Between the offense and his arrest, D. Wilkerson moved to Oklahoma City, found steady employment, earned his employer's respect, and stayed out of trouble. See Motion Brief at 12. Eighth, D. Wilkerson's post-arrest rehabilitation efforts put downward pressure on the sentence, and D. Wilkerson has completed dozens of courses and earned several certifications while incarcerated, including extensive vocational training, an Inmate Financial Responsibility Program, parenting classes, anger management, food service and cooking classes, and drug education courses. See Individualized Reentry Plan at 1-4; Motion to Supplement at 3-6. Similarly, that D. Wilkerson acts as a mentor to other inmates speaks positively of his character. His pro se briefing also evinces a keen intellect. Ninth, the need for the sentence to be not greater than necessary always puts downward pressure on the sentence. Tenth, D. Wilkerson's age -- he will turn sixty next year -- shows that he has a relatively low risk of recidivism. See U.S. Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders at 22 (2017), https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders (last accessed April 23, 2020). Eleventh, the federal offense for which D. Wilkerson is being resentenced involved no act of violence. Twelfth, while incarcerated, D. Wilkerson has had no significant disciplinary actions, and he has accrued the maximum possible good-conduct time credits. See Individualized Reentry Plan at 4. Thirteenth, D. Wilkerson does not appear to have had any serious drug problems, as the Court all too often

sees addiction leading to poor choices and recidivism. Finally, the political branches have spoken. The political branches, by and large, think the sentences of the past were too harsh. Courts should defer to Congress and to the President in deciding whether to afford defendants some benefit of the First Step Act.[9] This puts downward pressure on D. Wilkerson's sentence.

---

[9]The Court is not fond of the Sentencing Commission's and Congress' decision to make the Fair Sentencing Act's §§ 2 and 3, and other changes to the Guidelines, retroactive. The Court does not like revisiting sentences it worked hard to craft earlier. In general, it does not make sense to arrive at a sentence that accurately reflects the 3553(a) factors only to discard it several years later. It also often makes the Court not completely honest then at the original sentencing or now at the new sentencing. The Court works very hard to get its sentences right and to reflect accurately the § 3553(a) factors. It does not seem to make sense to have a second sentencing unless there was some procedural or substantive error. In a big district like New Mexico -- which received 3,969 new criminal case filings in 2018, the most recent year for which the DOJ has published these statistics, making the District of New Mexico the fifth most active district, see Dep't of Justice, United States Attorneys' Annual Statistical Report: Fiscal Year 2018 at 3 tbl.1, available at https://www.justice.gov/usao/resources/annual-statistical-reports (last accessed April 23, 2020), and currently has five active District Judges, three Senior District Judges, and two vacancies -- resentencing can impose a real burden. The retroactivity rule also treats criminal defendants as a class rather than considering the factors in each case, turning United States v. Booker on its head just for the defendants' benefit.

The Marshall Project, a nonprofit news organization covering the United State criminal justice system, estimates that the First Step Act's § 404, which makes the Fair Sentencing Act's §§ 2 and 3 retroactive, will affect approximately 2,600 federal prisoners convicted of crack offenses before 2010. See Justin George, "What's Really in the First Step Act?", The Marshall Project, available at https://www.themarshallproject.org/2018/11/16/what-s-really-in-the-first-step-act (last visited April 23, 2020). It is unlikely that retroactive application of the Fair Sentencing Act's amended Guidelines for crack cocaine offenses will produce noteworthy cost savings for the BOP or that it will achieve the purportedly intended decrease in the nation's prison population. Regarding other retroactive Guidelines amendments, the Department of Justice has urged that retroactive application of the Guidelines should be "rare" and "limited to lower-level non-violent drug offenders without significant criminal histories." Sally Quillian Yates, U.S. Att'y, N. Dist. Ga., Statement Before U.S. Sentencing Commission in the Public Hearing on Retroactive Application of 2014 Drug Guidelines Amendment 111-115 (June 10, 2014)(transcript available at http://www.ussc.gov/videos/public-hearing-june-10-2014)("Yates Testimony"). The DOJ added that retroactivity should be restricted "to a class of non-violent offenders who have limited criminal history, that did not possess or use a weapon and this will only apply to the category of drug offender who warrants a less severe sentence." Yates Testimony at 117. The First Step Act's § 404 does not include any of these categorical bars.

There are, however, eight factors that put upward pressure on his sentence.  First, D. Wilkerson's criminal history includes a major act of violence -- the killing of the mother of his children.  See PSR ¶ 60, at 20.  The Court notes, however, the argument that D. Wilkerson made at his initial sentencing hearing -- that the prosecutor in that case accepted D. Wilkerson's voluntary manslaughter plea because the prosecutor admitted he could not prove murder -- but the act is nonetheless reprehensible.  Indeed, the act is the primary reason that gives the Court pause in reducing D. Wilkerson's sentence.  D. Wilkerson has, however, attended anger management courses and has exhibited impeccable behavior in prison, demonstrating rehabilitation.  See Individualized Reentry Plan at 7.  Second, D. Wilkerson historically has not performed well on supervised release, as his probation and parole violations evidence.  See PSR ¶¶ 59-61, at 20-21. Additionally, D. Wilkerson committed this offense less than two years after being released from prison.  See PSR ¶ 62, at 21.  Third, although, as discussed above, D. Wilkerson's actual offense conduct does not govern his eligibility for First Step Act relief, the Court considers that conduct in determining whether to exercise its discretion and reduce D. Wilkerson's sentence.  Although the jury convicted him of aiding and abetting the possession with intent to distribute five grams or more of cocaine base, the PSR noted that D. Wilkerson was responsible for forty-four grams of cocaine base -- a significant quantity.  Fourth, this sentence must promote respect for the law. Fifth, this sentence must provide just deterrence, both at a specific and a general level, although D. Wilkerson's age -- and attendant low risk of recidivism -- as well as his relatively low-level drug offense, reduce the pressure that this factor exerts on D. Wilkerson's sentence.  Sixth, the Court must protect the public from D. Wilkerson's criminal behavior, although, again, his relatively low recidivism risk reduces the pressure that this factor places on his sentence.  Seventh,

the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct puts upward pressure to keep D. Wilkerson's sentence a Guidelines sentence.  Eighth, what reasonableness means for a district judge is that the sentence is sufficient to promote the § 3553(a) goals.

Although the Court closely examines each of these factors, the Court also takes a more holistic approach, viewing D. Wilkerson's past, his mistakes and accomplishments, his family situation, and his career prospects to determine the wisdom in a downward variance. D. Wilkerson's past includes one act of reprehensible violence thirty years ago -- for which D. Wilkerson served his time in prison -- and three arrests for drug trafficking offenses.  See PSR ¶¶ 58-68, at 20-22.  Yet his conduct while in the Bureau of Prison's custody has been exemplary. He has accumulated the maximum allowable good-conduct credit.  See Individualized Reentry Plan at 3-4.  He has maintained close ties to his children and has attended parenting classes, including a class on how to parent teenage children.  See Motion Brief at 2; Individualized Reentry Plan at 2-4; Motion to Supplement at 3-9.  He has attended several vocational classes and has hopes for a career as a paralegal that his mentoring other inmates inspired.  See Motion Brief at 2. Before his arrest in this case, he appeared to have turned his life around by moving to a new city and working, for what appears to be the first time in his life, a steady job.  See Motion Brief at 12. In short, D. Wilkerson appears to have turned his life around to the extent that he can while imprisoned.  Further, D. Wilkerson's age and reduced recidivism risk, as well as his relatively low-level drug offense, reduce the upward pressure that the need to provide specific and general deterrence typically places on a sentence.  Because the Court has identified fourteen factors placing downward pressure on D. Wilkerson's sentence and only eight factors placing upward pressure,

the Court is comfortable varying downward D. Wilkerson's sentence by one level. This places him at an overall offense level of 33, which, with a criminal history category of VI, places him at a Guidelines range of 235 to 293 months. See U.S.S.G. Sentencing Table. D. Wilkerson is currently in his 239th month of imprisonment. See Individualized Reentry Plan at 4 (providing that D. Wilkerson has been in custody since June 19, 2000).

The Court will sentence D. Wilkerson at the low end of the new Guidelines range, reducing D. Wilkerson's sentence to time served and resulting in his immediate release. D. Wilkerson has served almost twenty years and, absent First Step Act relief, has approximately ten years to go, before accounting for the BOP's good time calculation.[10] The Court concludes that, in this case, D. Wilkerson's personal circumstances and the Congressional intent behind the First Step Act and § 3553(a) warrant a one-level variance and a resulting sentence of time served. The Court will also reduce D. Wilkerson's eight-year term of supervised release, pursuant to D. Wilkerson's amended penalties under 21 U.S.C. § 841(b)(1)(C), which require a term of at least six years when a sentencing court imposes a term of conviction and the defendant has a prior conviction for a felony drug offense. See 21 U.S.C. § 841(b)(1)(C). Under the same § 3353(a) analysis the Court conducted above, the Court concludes that a six-year term of supervised release is sufficient, but not greater than necessary, to comply with the punishment purposes set forth in the Sentencing Reform Act.

---

[10]The First Step Act's § 102(b) increases the good time credits that inmates can earn -- that is, time credited toward the service of a prisoner's sentence, subject to the BOP's determination that the prisoner, for example, displays exemplary compliance with institutional disciplinary regulations or educational/rehabilitative programming. See First Step Act § 102.

The Court concludes that the punishment set forth in the Guidelines is not appropriate for this sort of offense.   D. Wilkerson was a footman for a considerable trafficking operation throughout southeast New Mexico and West Texas, but he was not a leader of the enterprise.  See PSR ¶¶ 11-21, at 5-9.   Moreover, the jury acquitted D. Wilkerson of conspiracy to commit possession with intent to sell, convicting him instead of the lesser offense of aiding and abetting the possession of five grams or more of cocaine base with intent to sell.  See PSR ¶ 48, at 18-19 The Court has considered the kinds of sentences and ranges that the Guidelines establish.  The Court concludes that a sentence of time served is necessary, but also adequate, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence -- both at a specific and a general level -- protect the public, avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and, because the Court has placed him on supervised release following his term of incarceration, effectively provides D. Wilkerson with needed education, training, and care to deal with the problems that have brought him to this point.  In sum, the Court concludes that the sentence given fully reflects each of the factors which 18 U.S.C. § 3553(a) embodies.  The Court also concludes that this sentence is reasonable.  The Court concludes that the sentence is sufficient, but not greater than necessary, to comply with the Sentencing Reform Act's purposes of punishment.  The Court rarely sentences higher in the range unless there is an aggravating factor, and while D. Wilkerson's crime and criminal history are serious, his offense conduct -- a nonviolent drug offense in which he was a supporting player -- and his post-offense rehabilitation show that a sentence of time served will further the policy goals in the First Step Act and § 3553(a).

The Court concludes that a sentence of time served followed by six years of supervised release is appropriate.

The Court has, as the record and this opinion demonstrate, carefully considered the Guidelines, but in arriving at its sentence, the Court has considered other sentencing goals. Specifically, the Court has considered the Guidelines' sentencing range established for the applicable category of offense committed by the applicable category of defendant. After carefully considering the case's facts and circumstances, the Court concludes that the punishment set forth in the level 33 Guidelines range is appropriate for D. Wilkerson's offense. D. Wilkerson's post-offense conduct is admirable, and it places him outside the class of analogous offenders such that a variance will not result in unwarranted disparities. The Court concludes, in sum, that a time-served sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a). While the Court's task, as a District Court and a sentencing court, is not to come up with a reasonable sentence, but to arrive at a sentence that accurately reflects the factors in 18 U.S.C. § 3553(a), see United States v. Martinez-Barragan, 545 F.3d 894, 904-05 (10th Cir. 2008), the Court also concludes the sentence is reasonable. Finally, but perhaps most importantly, the Court concludes that a time-served sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in the Sentencing Reform Act, the Fair Sentencing Act, and the First Step Act. Although Wilkerson is not entitled to a hearing, the Court will grant him one if he so requests after reading this memorandum opinion.

**IT IS ORDERED** that: (i) the Motion to Reduce Sentence Pursuant to Section 404 of the First Step Act, filed January 30, 2010 (Doc. 595), is granted; and (ii) Defendant Daryl Wilkerson's sentence is reduced to time served, followed by six years of supervised release.

UNITED STATES DISTRICT JUDGE

Counsel:

John C. Anderson
  United States Attorney
Terri Abernathy
James Braun
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Meghan D. McLoughlin
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*