**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                  No. CR 00-0557 JB

DARYL WILKERSON,

       Movant.

**MEMORANDUM OPINON AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Movant's Motion for Reconsideration Pursuant to His June 9th, 2022, Revocation Hearing, filed November 7, 2022 (Doc. 645)("First Reconsideration Motion"); (ii) the Movant's Motion for Reconsideration of Movant's Motion to Reduce Sentence Pursuant to the First Step Act § 404 Pursuant to 18 U.S.C. § 3582(c)(1)(B), filed January 2023 (Doc. 648)("Second Reconsideration Motion"); and (iii) the Movant'[s] Motion for Reconsideration of Movant's Motion to Reduce Sentence Pursuant to the First Step Act § 404 Pursuant to 18 U.S.C. § 3582(c)(1)(B) Pursua[n]t to This Motion to Amend, filed July 20, 2023 (Doc. 650)("Motion to Amend").    In the First Reconsideration Motion, the Second Reconsideration Motion, and the Motion to Amend, Movant Daryl Wilkerson asserts several grounds why the Court should reduce his term of imprisonment which the Court imposed upon a previous supervised release violation and should terminate the remainder of his supervised release term.  See First Reconsideration Motion at 1-3; Second Reconsideration Motion at 1-5; Motion to Amend at 1-2.  For the reasons discussed below, the Court denies all three motions.

## PROCEDURAL BACKGROUND

On November 15, 2000, a jury returned a guilty verdict against Wilkerson for aiding and abetting the possession with intent to distribute five grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2(a).  See Verdict Form at 2, filed November 15, 2000 (Doc. 174).  The criminal charge resulted from a traffic stop in which officers found a package containing 44.57 net grams of crack cocaine in a vehicle which Wilkerson was driving.  See Presentence Report, filed April 29, 2020 (Doc. 616)("PSR").[1]  Plaintiff United States of America filed a notice to enhance Wilkerson's sentence under 18 U.S.C. § 851, because Wilkerson had a previous controlled substance conviction.  See Information Charging Prior Convictions Pursuant to the Provisions of 21 U.S.C. § 851 and 18 U.S.C. § 3559(c)(1) and U.S.S.G. § 4B1.1, filed November 1, 2000 (Doc. 153).  At the sentencing hearing on April 25, 2001, the Honorable Sven Erik Holmes, United States District Judge for the United States District Court for the Northern District of Oklahoma, sitting by designation in the United States District Court for the District of New Mexico,[2] sentenced Wilkerson, who did not oppose the PSR's factual findings, to a term of 360 months of imprisonment followed by 8 years of supervised release.  See Sentencing Proceedings at 1, filed April 25, 2001 (Doc. 284); Judgment in a Criminal Case at 2-3, filed May 21, 2001 (Doc. 295).

On February 20, 2008, Wilkerson moved to reduce his sentence under 18 U.S.C. § 3582(c) based on a retroactive amendment to the United States Sentencing Guidelines' ("U.S.S.G." or the

---

[1]The PSR's initial disclosure date was January 31, 2001, in preparation for Wilkerson's sentencing hearing.  See PSR at 2 (no paragraph numbers given).

[2]Wilkerson's case was assigned to the Court on March 22, 2019.  See March 22, 2019, Docket Entry (text-only)(no docket number given).

"Guidelines") calculations with respect to cocaine base quantities, see Motion to Reduce Sentence at 1, filed February 20, 2008 (Doc. 412), which the Honorable C. LeRoy Hansen, then Senior United States District Judge for the United States District Court for the District of New Mexico dismissed for lack of jurisdiction, see Order, filed September 23, 2008 (Doc. 430). After a series of unsuccessful post-judgment motions, on January 30, 2019, Wilkerson filed a Motion to Reduce Sentence Pursuant to Section 404 of the First Step Act, filed January 30, 2019 (Doc. 595)("Motion to Reduce"), arguing that the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018)("First Step Act"), adjusted retroactively his statutory maximum sentence. See Motion to Reduce at 1. The Court granted the Motion to Reduce in its Memorandum Opinion and Order, filed May 1, 2020 (Doc. 617)("MOO"), and resentenced Wilkerson to a time-served sentence followed by six years of supervised release. See MOO at 75. In reaching this sentence, the Court concludes that "[t]he First Step Act thus covers D. Wilkerson's offense, because Fair Sentencing Act's § 2[, Pub. L. 111-220 (2010)] 'modified' the 'statutory penalties' under § 841(b) for § 841(a) 'violation[s]' that involved crack cocaine, and he committed that offense before the Fair Sentencing Act's 2010 enactment." MOO at 64 (quoting First Step Act §§ 404(a)-(b)).

Wilkerson began his term of supervised release on May 19, 2020. See Violation Report, filed September 23, 2020 (Doc. 623). On September 23, 2020, the United States Probation Office ("USPO") filed a Violation Report and a Petition for Revocation of Supervised Release, filed September 23, 2020 (Doc. 622)("Petition"), charging Wilkerson with a Grade C violation of his supervised release terms and noting that Wilkerson had been arrested for driving while intoxicated, had submitted positive drug tests, and left the judicial district without authorization. See Petition at 1-2; Violation Report at 1-2. The Court issued an arrest warrant, but Wilkerson absconded and

was not arrested until March 16, 2022.  <u>See</u> Arrest Warrant, filed November 10, 2020 (Doc. 625); Docket Text Noting Wilkerson's Arrest, filed March 16, 2022 (text-only)(no docket number assigned); Sentencing Memorandum at 1-2, filed June 6, 2022 (Doc. 639)(ex parte).  The USPO submitted an Amended Violation Report, filed March 17, 2022 (Doc. 627), and an Amended Petition for Revocation of Supervised Release, filed March 17, 2022 (Doc. 626)("Amended Petition"), charging Wilkerson with a Grade A violation based on new allegations that Wilkerson became violent with a romantic partner.  <u>See</u> Amended Petition at 1-2; Amended Violation Report at 1-2.  In a Supervised Release Violation Agreement, filed June 9, 2022 (Doc. 642), Wilkerson admitted to the positive drug tests, to using marijuana, and to leaving the District of New Mexico without permission, and Wilkerson and the United States stipulated to a term of imprisonment of 16 months, with the Court to determine length of any subsequently imposed supervised release. <u>See</u> Supervised Release Violation Agreement ¶¶ 7-8, at 3.  The United States also agreed to dismiss the violation allegations connected to the driving while intoxicated and domestic violence incidents.  <u>See</u> Supervised Release Violation Agreement ¶ 10, at 3.  At the supervised release revocation hearing on June 9, 2022, the Court accepted Wilkerson's admission of violation, imposed a 16-month term of imprisonment, and imposed 44 months of supervised release.  <u>See</u> Violation of Supervision Proceedings Minute Sheet at 1, filed June 9, 2022 (Doc. 643).

## <u>LAW REGARDING THE SENTENCING GUIDELINES</u>

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L No. 98-473, 98 Stat. 1837, 1987, thus making the Guidelines sentencing ranges effectively advisory.  543 U.S. at 245.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect,

and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four statutorily-defined purposes that 18 U.S.C. § 3553(a)(2) enumerates:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)   to afford adequate deterrence to criminal conduct;
>
> (C)   to protect the public from further crimes of the defendant; and
>
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551(a).  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the offense's nature, and the nature of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines sentences are no longer mandatory, both the Supreme Court and

the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"), overruled on other grounds by Gall v. United States, 552 U.S. 35 (2007).  The Guidelines are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] 'represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses.'"  United States v. Cage, 451 F.3d at 593 (quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349).  A reasonable sentence is one that "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  See United States v. Booker, 543 U.S. at 261-62.

Finally, the Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d at 1264.  This presumption is an appellate presumption, however, and not one that the trial court can or should apply.  See Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 350-51 (repeating that the presumption of reasonableness "is an *appellate* court presumption")(emphasis in original).  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption

in favor of the advisory Guidelines sentence.  See Kimbrough v. United States, 552 U.S. at 90-91;

Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

## LAW REGARDING THE FIRST STEP ACT

A federal district court may modify a defendant's sentence where Congress has specifically

authorized it to do so.  See 18 U.S.C. § 3582(c)(1)(B)(permitting a court to modify an imposed

term of imprisonment "to the extent otherwise expressly permitted by statute or by Rule 35 of the

Federal Rules of Criminal Procedure");[3] United States v. Blackwell, 81 F.3d 945, 947 (10th Cir.

1996)("A district court is authorized to modify a Defendant's sentence only in specified instances

where Congress has expressly granted the court jurisdiction to do so.").  See also United States v.

Hardage, 58 F.3d 569, 574 (10th Cir. 1995)("[W]ith the exception of certain powers which truly

fit the rubric of 'inherent power.' . . . federal courts cannot act in the absence of statutory

authority."); United States v. Caterino, 29 F.3d 1390, 1394 (9th Cir. 1994)("The authority to

change a sentence must derive from some federal statutory authority.").

On December 21, 2018, the President signed the First Step Act into law.  See First Step

---

[3]Rule 35 of the Federal Rules of Criminal Procedure outlines the circumstances under which a court may correct or reduce a sentence.  See Fed. R. Crim. P. 35.  Rule 35(a) permits a court, within fourteen days after sentencing, to correct a sentence "that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).  Rule 35(b)(1) permits a court, upon the government's motion made within one year of sentencing, to reduce a sentence if the defendant, "after sentencing, provided substantial assistance in investigating or prosecuting another person."  Fed. R. Crim. P. 35(b).  Rule 35(b)(2) permits the court to reduce a defendant's sentence upon the government's motion made more than one year after sentencing if the defendant's substantial assistance involved information either not known to the defendant until one year or more after sentencing, information which the defendant provided to the government within one year after sentencing, but which did not become useful until more than one year after sentencing, or information the usefulness of which the defendant could not have reasonably anticipated until more than one year after sentencing, and which the defendant promptly provided to the government after its usefulness became reasonably apparent to the defendant.  See Fed. R. Crim. P. 35(b)(2)(A)-(C).

Act.  The First Step Act's § 404 makes the Fair Sentencing Act's sections 2 and 3 retroactive.  See

First Step Act § 404.  The full text of the First Step Act's § 404 is as follows:

### SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a)      DEFINITION OF COVERED OFFENSE. -- In this section, the term "covered offense" means a violation of a Federal Criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

(b)      DEFENDANTS PREVIOUSLY SENTENCED. -- A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c)      LIMITATIONS. -- No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404.  The full text of the Fair Sentencing Act's §§ 2 and 3 is as follows:

### SEC. 2. COCAINE SENTENCING DISPARITY REDUCTION.

(a)      CSA. -- Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended --

<< 21 USCA § 841 >>

(1)      in subparagraph A(iii), by striking "50 grams" and inserting "280 grams"; and

<< 21 USCA § 841 >>

(2)      in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams".

(b)      IMPORT AND EXPORT ACT. -- Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended --

<< 21 USCA § 960 >>

(1)        in paragraph (1)(C), by striking "50 grams" and inserting "280 grams"; and

<< 21 USCA § 960 >>

(2)        in paragraph (2)(C), by striking "5 grams" and inserting "28 grams".

<< 21 USCA § 844 >>

## SEC. 3.  ELIMINATION OF MANDATORY MINIMUM SENTENCE FOR SIMPLE POSSESSION.

Section 404(a) of the Controlled Substances Act (21 U.S.C. 844(a)) is amended by striking the sentence beginning "Notwithstanding the preceding sentence,".

Fair Sentencing Act §§ 2-3.

Section 404 is the only First Step Act provision that applies retroactively to already sentenced defendants.  See First Step Act § 404.  See also United States v. Gonzalez-Oseguera, Crim. No. 06-00593 HG-01, 2019 WL 1270916, at *1 (D. Haw. March 19, 2019)(Gillmor, J.) (stating that "[t]here are a number of reforms in the First Step Act, but Section 404 is the only provision that applies retroactively to defendants who have already been sentenced").  Section 404 permits a federal district court to resentence a defendant based on the Fair Sentencing Act's revised statutory penalties for crack cocaine offenses.  See First Step Act § 404.  To be eligible for relief under the First Step Act's § 404, a defendant must have been convicted and sentenced for a covered offense, as defined in the First Step Act's § 404(a).  See First Step Act § 404(a).  To be convicted of a covered offense, a defendant (i) must have been convicted for violating a federal criminal statute, for which the Fair Sentencing Act's §§ 2-3's modified the penalties; and (ii) have committed that offense before August 3, 2010.  See First Step Act § 404(a); United States v. Mannie, 971 F.3d 1145, 1147-48 (10th Cir. 2020)(concluding that a defendant is eligible for a

reduction under the First Step Act where "he or she was convicted of and sentenced for (1) a

violation of a federal criminal statute, (2) the statutory penalties for which were modified by

section 2 or 3 of the 2010 [Fair Sentencing Act], and (3) that was committed prior to August 3,

2010").  See also United States v. Gonzalez-Oseguera, 2019 WL 1270916, at *2 (stating that

defendant was not convicted of a covered offense, because defendant was convicted of an offense

involving methamphetamine, for which the Fair Sentencing Act's §§ 2-3 did not modify the

statutory penalties); United States v. Drayton, CRIMINAL ACTION No. 10-20018-01-KHV,

2019 WL 464872, at *2 (D. Kan. February 6, 2019)(Vratil, J.)(concluding that the court lacked

jurisdiction to reduce the defendant's sentence under the First Step Act, where the defendant was

convicted of an offense involving powder cocaine and marijuana).  The First Step Act includes

two exceptions:

> "No court shall entertain" a 2018 [First Step Act] motion if (1) an offender's
> sentence for the covered offense was previously imposed or reduced in accordance
> with section 2 or 3 of the 2010 [Fair Sentencing Act], or (2) the court has already
> denied a previous 2018 [First Step Act] motion "after a complete review of the
> motion on the merits."

United States v. Mannie, 971 F.3d at 1152 (quoting First Step Act § 404).  The statute of

conviction, not the defendant's conduct, controls First Step Act eligibility.  See, e.g., United States

v. Davis, 423 F. Supp. 3d 13, 17 (W.D.N.Y. 2019)(Skretny, J.)(rejecting the government's

argument that a defendant was not First Step Act eligible, because, if the Fair Sentencing Act had

been in place when the offense was convicted, the indictment would have alleged a greater quantity

of drugs as required to trigger the penalties, because "it is the statute of conviction, not actual

conduct, that controls eligibility under the First Step Act").

Although a defendant may be eligible for First Step Act relief, whether that relief is

warranted is a separate inquiry.  See First Step Act § 404(c) (stating that "nothing in this section

shall be construed to require a court to reduce any sentence pursuant to this section").  The First

Step Act is silent regarding what a court may consider in determining whether resentencing of a

First Step Act-eligible defendant is warranted.  See First Step Act § 404.  The Tenth Circuit has

explained that the First Step Act authorizes modification to a sentence under 18 U.S.C.

§ 3582(c)(1)(B), but does not authorize plenary resentencing.  See United States v. Brown, 974

F.3d 1137, 1144 (10th Cir. 2020).  Section 3582(c)(1)(B) permits modification of an imposed

imprisonment term to the extent "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B).  The

Supreme Court has explained that the First Step Act allows district courts to consider intervening

changes of law or fact in exercising their discretion to reduce a sentence.  See Concepcion v. United

States, 142 S. Ct. 2389, 2404 (2022).  This consideration extends to the defendant's relevant

conduct after his or hir original sentencing.  See Concepcion v. United States, 142 S. Ct. at 2402-

03.  The Tenth Circuit further has directed courts to consider the Guidelines as they existed at the

defendant's original sentencing, but to interpret the Guidelines in line with intervening changes in

law.  See United States v. Brown, 974 F.3d at 1144-45.  Courts also may use their discretion to

consider the § 3553 sentencing factors.  See United States v. Brown, 974 F.3d at 1145-46, 1146

n.5 (citing United States v. Mannie, 971 F.3d 1145, 1158 n.18 (10th Cir. 2020)); United States v.

Robertson, 837 F. App'x 639, 641 (10th Cir. 2020).[4]  The First Step Act does not mandate the

---

[4]United States v. Robertson is an unpublished opinion, but the Court can rely on an
unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case
before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited
for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

defendant's presence at a hearing, see First Step Act § 404, and the Tenth Circuit has announced that a defendant moving for resentencing is not entitled to a hearing. See United States v. Mannie, 971 F.3d at 1157; United States v. Brown, 974 F.3d at 1144 n.2 ("Given that the First Step Act operates through § 3582(c)(1)(B), resolution of the underlying legal issue in this case does not require an in-person hearing.").

**ANALYSIS**

The Court considers Wilkerson's three motions below.  First, it considers the First Reconsideration Motion, then the Second Reconsideration Motion, and finally the Motion to Amend.  The Court denies each motion.

**I.      THE COURT DENIES THE FIRST RECONSIDERATION MOTION.**

Wilkerson filed the First Reconsideration Motion on November 7, 2022, while incarcerated at the Federal Correctional Institute in Florence, Colorado.  See First Reconsideration Motion at 1.  He argues that, because President Joseph R. Biden, Jr., announced on October 6th, 2022, that "no one should be in jail for using or possessing mariju[a]na," and that he is "pardoning all prior federal offenses of simple marijuana possession," the Court should reduce his sentence and terminate the remainder of his supervised release.  First Reconsideration Motion at 1.  He argues that these statements are an intervening change in the law that allow him to move for reconsideration of his sentence.  See First Reconsideration Motion at 3.  He also argues that his counsel, Daniel Rubin, provided him ineffective assistance, because Mr. Rubin pretended he could not hear Wilkerson during a telephone call, and because Mr. Rubin negotiated a revocation term

---

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Robertson, Crawford v. Booker, 229 F.3d 1162 (table), 2000 WL 1179782 (10th Cir. 2000), and United States v. Taylor, 724 F. App'x 665 (10th Cir. 2018), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

of imprisonment of 16 months when Wilkerson's true revocation range was only 8 to 14 months. See First Reconsideration Motion at 2 (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); Lafler v. Cooper, 566 U.S. 156, 163 (2012)).

The United States responded on November 23, 2022.  See United States' Response to Defendant's Motion for Reconsideration of Sentence, filed November 23, 202 (Doc. 647)("First Reconsideration Response").   The United States first argues that the Court does not have jurisdiction to reduce Wilkerson's 16-month revocation sentence, because Wilkerson has not identified any statutory authorization for the Court to reduce the sentence, and because other authorization sources, namely 18 U.S.C. § 3582(c), rule 35 of the Federal Rules of Criminal Procedure, and the United States Sentencing Commission's lowering of the applicable sentencing range, do not apply.   See First Reconsideration Response at 4-5 (quoting United States v. Blackwell, 81 F.3d 945, 974-48 (10th Cir. 1996)).  The United States next argues that 18 U.S.C. § 3583(e) allows the Court to terminate a supervised release term after a defendant has completed one year of supervised release, but that Wilkerson did not complete one year of supervised release before violating his conditions and absconding in September, 2020, and that his supervised release period therefore was tolled.  See First Reconsideration Response at 5 (citing United States v. Cartagena-Lopez, 979 F.3d 356, 359 (5th Cir. 2020); United States v. Island, 916 F.3d 249, 252 (3rd Cir. 2019); United States v. Buchanan, 638 F.3d 448 (4th Cir. 2011)).   The United States argues that, even if § 3583(e) authorizes the Court to terminate Wilkerson's supervised release term, the Court should decline to exercise its discretion to do so, because his behavior on supervised release counsels against termination.  See First Reconsideration Response at 6.  Finally, the United States argues that Wilkerson's ineffective-assistance-of-counsel motion is more properly brought as a petition for post-judgment relief under 28 U.S.C. § 2255 and that the Court

should determine whether Wilkerson consents to recharacterizing his ineffective assistance of counsel argument as a § 2255 motion.  See First Reconsideration Response at 6-7 (citing United States v. Kelly, 235 F.3d 1238 (10th Cir. 2000)).

The Court denies the First Reconsideration Motion.  First, the Court concludes that a defendant's supervised release term does not toll when that defendant has absconded from supervision.  As the United States Court of Appeals for the Fourth Circuit notes, in an opinion authorizing "fugitive tolling": "It is true that Congress has created a supervised release tolling provision in only one instance -- § 3624(e)."  United States v. Buchanan, 638 F.3d 448, 456 (4th Cir. 2011).  That provision states: "A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."  18 U.S.C. § 3624(e). The Fourth Circuit concludes, however, that Congress' silence whether supervised release tolls in other circumstances is not an indication that Congress intended to allow tolling only in situations where a defendant is imprisoned.  See United States v. Buchanan, 638 F.3d at 456.  The Fourth Circuit explains:

> When a defendant absconds while on supervised release, his absence precludes the sentencing court from exercising supervision over him.  Tolling is necessary in that instance to ensure that, upon being apprehended, the defendant will be subject to judicial supervision for a complete term.  However, that does not mean that a defendant who has absconded thereby nullifies the terms and conditions of the supervised release order during his flight.  Rather, the terms and conditions remain in effect, and the fugitive-defendant is not at liberty to embark on a "holiday" from them.  To the extent that this result may seem harsh, it is the defendant's own misconduct which creates it.

United States v. Buchanan, 638 F.3d at 458.  Other Courts of Appeals also have adopted the fugitive tolling rule.  See United States v. Barinas, 865 F.3d 99, 106 (2d Cir. 2017); United States v. Island, 916 F.3d 249, 251 (3d Cir. 2019); United States v. Cartagena-Lopez, 979 F.3d 356, 359,

withdrawn, No. 20-40122, 2020 WL 13837259 (5th Cir. 2020); United States v. Delamora, 451 F.3d 977, 978 (9th Cir. 2006). But see United States v. Hernandez-Ferrer, 599 F.3d 63, 64 (1st Cir. 2010)(concluding that supervised release is not tolled during fugitive status).

The Court is not concerned that the Fourth Circuit's remedy is a harsh one, but, like the United States Court of Appeals for the First Circuit, is concerned that fugitive tolling does not have a source in statutory text, while § 3624(e) provides explicitly for tolling for a defendant's term of imprisonment. See United States v. Hernandez-Ferrer, 599 F.3d at 67. The Court notes that Congress provides in § 3624(e) an exception for this tolling when the imprisonment lasts for less than thirty days. See 18 U.S.C. § 3624(e). Congress has not hinted at whether a similar exception would exist for fugitive tolling, and the Court notes that this silence complicates determining how long a tolling period the Court should apply in each case. When a defendant's fugitive status begins is not cut and dry in every situation, and without congressional authorization, the Court is unwilling to import a complicated tolling rule into its supervision of defendants.

The extra-statutory remedy of tolling is a remedy in search of a problem. The Court acknowledges, for example, the United States Court of Appeals for the Second Circuit's reluctance to allow a fugitive defendant to """"take advantage of his own wrong,""" United States v. Barinas, 865 F.3d at 107 (quoting United States v. Buchanan, 638 F.3d at 453 n.3 (quoting Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232 (1959))), but concludes that this result does not let a fugitive defendant off the hook. To the extent that the United States is concerned that not tolling supervised release terms when a defendant has absconded could allow that defendant to abscond for the full supervised release term and thereby avoid supervision upon the term's expiration, the Court notes that 18 U.S.C. § 3583(i) authorizes courts to revoke a supervised release term for a violation "beyond the expiration of the term of supervised release for any period reasonably necessary for

the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation."  18 U.S.C. § 3583(i).  The Court can thus punish violations and impose another term of supervised release; a defendant does not avoid the Court's power by absconding.  Additionally, the Court recognizes the Second Circuit's citation to Anderson v. Corall, 263 U.S. 193 (1923), for the proposition that "an '[e]scape from prison interrupts service, and *the time elapsing between escape and retaking will not be taken into account . . . ,*'" United States v. Barinas, 865 F.3d at 108 (quoting Anderson v. Corall, 263 U.S. at 196)(alterations and emphasis in United States v. Barinas but not in Anderson v. Corall), but emphasizes that incarceration and supervised release are different parts of a defendant's sentence.  Escape from the Bureau of Prisons is a federal crime, see 18 U.S.C. § 751; absconding from supervision is a violation of supervised release and usually not treated as a crime, see United States v. Gross, 2022 WL 1651063, at *10-13 & n.6 (D.N.M. May 23, 2022)(Browning, J)(analyzing § 751's applicability to pre-trial supervised release); United States v. Foster, 754 F.3d 1186, 1193 (10th Cir. 2014)(explaining that, in concluding that a defendant who absconded from a halfway house as part of his supervised release term had escaped under § 751, "the standard for whether the defendant was in custody turns on the degree of restriction placed upon him").  The Supreme Court in United States v. Johnson, 529 U.S. 53 (2000), explains Congress' purposes behind supervised release:

> Congress intended supervised release to assist individuals in their transition to community life.  Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.   See  § 3553(a)(2)(D); United States Sentencing Commission, Guidelines Manual §§ 5D1.3(c), (d), (e) (Nov. 1998); see also S. Rep. No. 98-225, p. 124 (1983)(declaring that "the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release").

Sentencing courts, in determining the conditions of a defendant's supervised release, are required to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; . . . and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment."   18 U.S.C. § 3553(a).   In the instant case, the transition assistance ordered by the trial court required respondent, among other conditions, to avoid possessing or transporting firearms and to participate in a drug dependency treatment program.   These conditions illustrate that supervised release, unlike incarceration, provides individuals with postconfinement assistance.  Cf. Gozlon-Peretz [v. United States], [498 U.S. 395,] 407 . . . [(1991)](describing "[s]upervised release [a]s a unique method of postconfinement supervision invented by the Congress for a series of sentencing reforms").

United States v. Johnson, 529 U.S. at 59-60 (first, fifth, sixth alterations and first three ellipses in

United States v. Johnson, but not in quoted material).  Because supervised release does not have

the same punitive purpose as imprisonment, the Court does not import the Supreme Court's

determination that a prison term is tolled for a fugitive defendant to the supervised-release context.

In any event, § 3583 speaks in permissive terms and not mandatory terms, see 18 U.S.C.

§ 3583(e)(1) ("The court may . . . terminate a term of supervised release . . . after the expiration of

one year of supervised release . . . ."), and the Court agrees with the United States that Wilkerson's

behavior while on his previous term of supervised release does not warrant the exercise of this

discretion, see First Reconsideration Response at 6.  Additionally, the Court concludes that, to the

extent that President Biden's proclamation pardons those convicted of simple possession of

marijuana, it does not apply to Wilkerson.  In announcing his proclamation, President Biden stated:

"My intent by this proclamation is to pardon only the offense of simple possession of marijuana

in violation of Federal law or in violation of D.C. Code 48-904.01(d)(1), and not any other offenses

related to marijuana or other controlled substances."   Joseph R. Biden Jr., A Proclamation on

Granting Pardon for the Offense of Simple Possession of Marijuana, The White House (Oct. 6,

2022),          https://www.whitehouse.gov/briefing-room/presidential-actions/2022/10/06/granting-pardon-for-the-offense-of-simple-possession-of-marijuana/.          The Court did not sentence Wilkerson to a term of imprisonment based on a conviction of simple possession of marijuana in violation of federal law, but because he used marijuana in violation of his terms of supervised release, in addition to his other violations.  See Violation of Supervision Proceedings Minute Sheet at 1.  Accordingly, President Biden's proclamation does not cover Wilkerson's conduct here, and in the absence of compelling reasons why the Court should terminate his period of supervised release, the Court declines to do so.[5]

Regarding Wilkerson's ineffective-assistance-of-counsel argument, the Court declines the United States' invitation to request Wilkerson's consent to convert his argument into a § 2255 petition.  See First Reconsideration Response at 6-7.[6]  Wilkerson is aware of § 2255 and previously

---

[5]To the extent that Wilkerson makes this argument in support of shortening his term of imprisonment, the Court concludes for the same reason that it will not reduce his term of imprisonment.  The Court notes, however, that this argument is moot, because the docket reflects that Wilkerson has been released from custody.  He notes in his Second Reconsideration Motion, for example, that his release date is May 2, 2023, see Second Reconsideration Motion at 5, and filed a Notice of Address Change on April 3, 2023 (Doc. 649), indicating that his address has changed from FCI Florence to a residence in Hobbs, New Mexico, see Notice of Address Change at 1.

[6]As the United State acknowledges, courts should not convert sua sponte defendants' arguments against their convictions into motions to vacate under § 2255, because of the implications that such an action may have on successive § 2255 petitions.  See First Reconsideration Response at 6-7 (citing United States v. Kelly, 235 F.3d at 1238); United States v. Kelly, 235 F.3d at 1241-42.  The United States Court of Appeals for the Tenth Circuit in United States v. Kelly explains:

> We generally agree with the approach taken by the Second and Third Circuits, and we hold that district courts should use the procedure adopted in *Adams* [*v. United States*, 155 F.3d 582 (2d Cir. 1998),] for dealing with pro se post-conviction motions not expressly made under § 2255:
>
> [D]istrict courts should not recharacterize a motion purportedly

has filed a motion pursuant to § 2255 attacking his underlying conviction in this case.   See Wilkerson v. United States, Motion Under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed June 4, 2003 (Doc. 1), No. CIV 03-0679 MCA/RLP (D.N.M. June 4, 2003).   Instead of filing a § 2255 petition contesting his conviction upon revocation of supervised release, he has opted to file the First Reconsideration Motion. Accordingly, the Court deals with his arguments on the merits.

The Supreme Court explains the standard for an ineffective-assistance-of-counsel claim in Strickland v. Washington, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.  Wilkerson asserts that Mr. Rubin pretended he could not hear Wilkerson on the telephone, agreed to a revocation term of imprisonment of 16 months when Wilkerson's imprisonment range was 8 to 14 months, and, "when this excessive sentence was brought to

---

> made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized.

*Adams*, 155 F.3d at 584.

United States v. Kelly, 235 F.3d at 1242.  The Court here does not convert Wilkerson's ineffective-assistance-of-counsel argument to a § 2255 petition, but disposes of it on its merits without prejudice to his filing a § 2255 motion at a later time.

counsel Rubin['s] attention, he really had nothing to say and acted like he was lost for words."
First Reconsideration Motion at 2.  The Court concludes that, to the extent that these actions are
errors, they did not prejudice Wilkerson's sentencing.

At the June 9, 2022, revocation hearing, the Court discussed with the parties the applicable
sentencing ranges.  See Transcript of Proceedings (taken June 9, 2022) at 5:19-9:3 (Court, Kastrin,
Sonive, Rubin, Wilkerson), filed November 17, 2022 (Doc. 646)("Tr.").  The Court explained that,
if the Court found Wilkerson guilty of all of the violations which the United States had alleged, he
faced a revocation range of imprisonment of 33 to 41 months, but that the maximum statutory
penalty was three years.  See Tr. at 5:19-6:11 (Court, Wilkerson).  This range was based on the
Amended Violation Report's allegation of a Grade A violation.  See Amended Violation Report
at 2.  As the Supervised Release Violation Agreement indicates, the parties agreed that the United
States would allow Wilkerson to plead guilty only to the marijuana and unauthorized-travel
violations and, would drop the violation allegations regarding Wilkerson driving while intoxicated
and committing domestic violences in exchange for a 16 month imprisonment term.  See Tr. at
6:12-7:18 (Court, Kastrin, Rubin); Supervised Release Violation Agreement ¶ 8, at 3.  The parties
agreed that, without the domestic-violence allegation, Wilkerson's revocation range would be 8 to
14 months.  See Tr. at 7:1-8:7 (Court, Kastrin, Rubin).  The USPO also indicated that, because the
Court previously resentenced Wilkerson, his underlying violation became a Class C felony instead
of a Class B felony, making the statutory maximum term of imprisonment 24 months.  See Tr. at
8:11-19 (Sondive).  The Court questioned Wilkerson whether he understood this new maximum
and, after initial confusion, Wilkerson conferred with Mr. Rubin and indicated that he understood.
See Tr. at 8:20-9:1 (Court, Wilkerson).  Through the Court's questioning, Wilkerson indicated that

he understood the proceedings and was admitting to guilt of his own volition.  See Tr. at 9:15-11:16 (Court, Wilkerson).

On the basis of the hearing record and the Supervised Release Violation Agreement, the Court concludes that Mr. Rubin's actions were not prejudicial to Wilkerson.  If Wilkerson had not entered into the agreement with the United States, the United States might have continued to pursue the alleged violations related to Wilkerson's driving while intoxicated and engaging in domestic violence, and his revocation range would have remained at 33 to 41 months, with a statutory cap of 24 months.  With the agreement, however, the United States agreed not to pursue those violations and agreed to an imprisonment term of 16 months.  Although the term is higher than the subsequent 8 to 14 month range that would have been applicable without the dropped violations, Wilkerson decreased his exposure to imprisonment by 8 months as a result of the agreement. Accordingly, the Court does not conclude that Mr. Rubin's recommendation that Wilkerson accept the plea agreement or his other actions prejudiced his sentencing options.[7]  Because the Court concludes that President Biden's proclamation does not apply to Wilkerson and that Rubin's actions did not prejudice Wilkerson's sentencing, the Court denies the First Reconsideration Motion.

## II.    THE COURT DENIES THE SECOND RECONSIDERATION MOTION AND THE MOTION TO AMEND.

Wilkerson filed his Second Reconsideration Motion on January 30, 2023.  See Second Reconsideration Motion at 1.  He argues that, in issuing its MOO granting Wilkerson's Motion to Reduce, the Court "failed to consider or erred in not considering that due to the intervening changes

---

[7]With regards to Wilkerson's allegation that Mr. Rubin pretended he could not hear him on the telephone, Wilkerson has not demonstrated that this alleged evasion has prejudiced him in connection with the Court's sentencing or any other proceeding before the Court.

of law, facts that Movant in this case was no longer considered a career offender."   Second Reconsideration Motion at 1.   Specifically, he argues that the Court determined incorrectly that it did not have the discretion to hear Wilkerson's arguments that intervening changes of law and fact supported his motion under the First Step Act.   See Second Reconsideration Motion at 1 (citing Concepcion v. United States, 142 S. Ct. at 2389).   Accordingly, Wilkerson asserts that his Guideline range should be 57 to 71 months, and that the Court should terminate his remaining supervised release term.   See Second Reconsideration Motion at 1-2.   In his Motion to Amend, Wilkerson expands on the Second Reconsideration Motion, arguing, in addition to his contention that the Court did not consider that he no longer is a career offender, that: (i) the Court did not adjust for Wilkerson's good-time credit -- based on his imprisonment in connection with his underlying conviction -- when it adjusted his sentence to time served; and (ii) Wilkerson has less time on supervised release than the good-time credit which he accrued while imprisoned in connection with his underlying conviction, and so the Court should apply that time to his supervised release term.   See Motion to Amend at 1-2.

The United States responds to both the Second Reconsideration Motion and the Motion to Amend in the United States' Response to Defendants Motion to Reduce Sentence and to Amend, filed August 8, 2023 (Doc. 651)("Second Reconsideration Response").   First, they argue that Wilkerson miscalculates what his Guideline range would have been if the career-offender enhancement did not apply, and that it would be 92 to 115 months, based on an offense level of 24 and a criminal history category of V.   See Second Reconsideration Response at 4 n2.   The United States acknowledges that the Supreme Court holds in Concepcion v. United States that the Court may consider intervening changes of law or fact in reducing a sentence pursuant to the First Step Act, but notes that the Supreme Court continues that the Court "'cannot . . . recalculate a movant's

benchmark Guideline range in any way other than to reflect the retroactive application of the Fair Sentencing Act . . . .   That Guideline range "anchors" the sentencing proceeding.'"   Second Reconsideration Response at 4-5 (quoting <u>Concepcion v. United States</u>, 142 S. Ct. at 2402 n.6)(ellipsis in Second Reconsideration Response but not in <u>Concepcion v. United States</u>).   The United States argues that the Fair Sentencing Act lowered the threshold quantities of cocaine base needed to reach certain statutory penalties, but that it did not implicate the Guideline's career offender provision.   <u>See</u> Second Reconsideration Response at 5.   The United States then notes that the Court in its MOO calculated Wilkerson's revised Guideline range by dropping the statutory maximum penalty from the penalty connected with a B-Level crack cocaine offense to the penalty connected with a C-Level crack cocaine offense, and then applied this lower maximum sentence to the career offender calculation under § 4B1.1.   <u>See</u> Second Reconsideration Response at 5 (citing MOO at 65).   Accordingly, the Court determined that Wilkerson's new offense level of 34 and criminal history category of VI resulted in a Guideline range of 262 to 327 months, from which the Court varied downward by three levels to reach a sentence of time served or 239 months.   <u>See</u> Second Reconsideration Response at 6 & n.3 (citing MOO at 73).   The United States concludes, therefore, that, even if Wilkerson "were correct that he would not be a career offender today, that would not change the retroactive calculation of his guideline range under the First Step Act because that recalculation would have been outside the parameters of the Fair Sentencing Act and thus the First Step Act."   Second Reconsideration Response at 6 (citing <u>Concepcion v. United States</u>, 142 S. Ct. at 2402 n.6).   Additionally, the United States argues that, because the Court resentenced Wilkerson to time served, a determination whether Wilkerson was still a career offender would have had no impact on the resentencing.   <u>See</u> Second Reconsideration Response at 6.   The United States argues further that, even if it were to concede that Wilkerson is no longer a career

offender -- which it does not concede -- the Court would not be able to reduce his supervised release below the statutory mandatory minimum of six years.  See Second Reconsideration Response at 6 (citing 21 U.S.C. § 841(b)(1)(C); MOO at 73).  Finally, the United States reiterates its argument from the First Reconsideration Response that, even if the Court could reduce Wilkerson's supervised release term, it should not do so, because of the brief time that Wilkerson served on his initial supervised release term as well as his behavior while initially on supervised release.  See Second Reconsideration Response at 6-7.

The Court denies the relief which Wilkerson requests in his Second Reconsideration Motion and in his Motion to Amend.  First, with regard to Wilkerson's argument that, because he was unable to avail himself of his earned good-time as a result of the Court's resentencing him to time served, and that the Court should credit the balance towards his supervised release term, the Court finds the Tenth Circuit's decision in Crawford v. Booker, 229 F.3d 1162 (table), 2000 WL 1179782 (10th Cir. 2000), persuasive.  In Crawford v. Booker, the petitioner argued, like Wilkerson, for a reduction in his three-year term of supervised release, because he was released early from prison.  See 2000 WL 1179782, at *1.  The Tenth Circuit applied the Supreme Court's decision in United States v. Johnson, 529 U.S. 53 (2000)("Johnson"), explaining:

> In Johnson, the Court considered whether a term of supervised release can be decreased to reflect the excess amount of time spent in prison on a sentence, an issue on which the circuits had split.  Johnson was serving a sentence for a number of felony convictions when two of his convictions were vacated.  He was released from prison, but had already served more prison time than warranted under his amended sentence.  He then sought to reduce his period of supervised release to correspond with the excess prison time served.  Interpreting 18 U.S.C. § 3624(e), the controlling statute, the Court concluded that "[t]he statute, by its own necessary operation, does not reduce the length of a supervised release term by reason of excess time served in prison." Johnson, [529 U.S. at 60]; see also § 3624(e) (stating in relevant part that "[t]he term of supervised release commences on the day the person is released from imprisonment" and "[a] term of supervised release does not run during any period in which the person is imprisoned . . . unless the

- 24 -

imprisonment is for a period of less than 30 consecutive days").  In addition to examining the language of the statute, the Court considered the rationale underlying supervised release.  *See Johnson*, [529 U.S. at 59] (explaining that "Congress intended supervised release to assist individuals in their transition to community life" and that "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration").

Based on *Johnson*, even if Mr. Crawford's legal argument was successful, this court could not shorten the length of his supervised release term.  *See Aragon v. Shanks*, 144 F.3d 690, 692 (10th Cir. [1998])(explaining in context of § 2254 petition that, because the petitioner's incarceration was completed, the case was "moot unless a favorable decision from this court would shorten the period of his probation") . . . .

Crawford v. Booker, 2000 WL 1179782, at *2 (alterations and omissions in Crawford v. Booker but not in Johnson).  For similar reasons, the Court does not apply Wilkerson's unused good-time to shorten his term of supervised release.

Second, the Court examines Wilkerson's argument that the Court did not consider that, under intervening law, he was no longer a career offender.  See Second Reconsideration Motion at Second Reconsideration Motion at 1.  The Court notes first that it is unclear what intervening changes in the law Wilkerson contends the Court did not consider.  In the Second Reconsideration Motion, Wilkerson cites: (i) Concepcion v. United States, to argue that the First Step Act "requires district courts to apply the legal changes in the Fair Sentencing Act when recalculating a movant's Guidelines . . . , but it may not limit the information a district court may use to inform it[] whether and how much to reduce a sentence,"  Second Reconsideration Motion at 2,[8] and to argue that he "is no longer considered a career offender and that he has done more time than he should have done," Second Reconsideration Motion at 4; (ii) United States v. Price, 44 F.4th 1288 (10th Cir. 2022), for the proposition that a court's sentence reduction pursuant to §§ 3582(c)(1)(A) and (c)(2)

---

[8]Wilkerson cites here to "2022 U.S. 8," but it is not clear to what this citation refers. Second Reconsideration Motion at 2

should be consistent with the United States Sentencing Commission's applicable policy, see Second Reconsideration Motion at 2-3; (iii) United States v. Brown, 974 F.3d at 1144, for the proposition that the First Step Act operates through § 3582(c)(1)(B), see Second Reconsideration Motion at 3; and (iv) United State v. Chambers, 956 F.3d 667 (4th Cir. 2020), asserting that the United States Court of Appeals for the Fourth Circuit vacated and remanded the lower court's decision with instructions to recalculate the defendant's Guideline range without a career-offender enhancement, see Second Reconsideration Motion at 4.  He does not argue that the Court did not consider these opinions in drafting its MOO, and of these four opinions, only United States v. Chambers -- published April 23, 2020 -- was published before the Court issued its MOO on May 1, 2020.

In United States v. Chambers, the defendant was charged as a career offender because of Fourth Circuit case law that directed sentencing courts to consider the maximum aggravated sentence that could be imposed for a given crime in determining a defendant's career-offender status.  See 956 F.3d at 669 (citing United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005)).  The sentencing court applied this precedent to two of the defendant's previous convictions that otherwise would not have been eligible for the application of the career-offender enhancement. See 956 F.3d at 669.  Several years later, the Fourth Circuit overturned this precedent and directed sentencing courts to consider crimes as applied to the individual defendant and not to a hypothetical defendant, and explained that its decision would have retroactive effect.  See 956 F.3d at 669 (citing United States v. Simmons, 649 F.3d 237, 243 (4th Cir. 2011); Miller v. United States, 735 F.3d 141, 146 (4th Cir. 2013)).  Accordingly, when the sentencing court on reconsideration pursuant to the First Step Act declined to recalculate the defendant's sentence without the career-offender enhancement, the Fourth Circuit vacated and remanded, explaining that the sentencing

court was authorized to consider intervening changes in the law regarding the Guidelines' application.  See United States v. Chambers, 956 F.3d at 673-75.  Wilkerson has not suggested that there has been an intervening change in Supreme Court or Tenth Circuit precedent that would disqualify him as a career offender.  Similarly, in his original Motion to Reduce which the Court granted in its MOO, Wilkerson does not gesture to relevant law, other than the First Step Act, to convince the Court that it should reduce his sentence.  See Motion to Reduce at 1-4.

The Court acknowledges that the Tenth Circuit has directed courts to review intervening law which may impact a defendant's Guideline calculation when reconsidering based on the First Step Act.  See United States v. Brown, 974 F.3d at 1145.  As the Tenth Circuit explains in United States v. Brown, its interpretations of the law applicable to the Guidelines' calculations are "not an amendment to the law between [the defendant's] original sentencing and his First Step Act sentencing; [they are] a clarification of what the law always was," and that, "[i]f the district court erred in the first Guideline calculation, it is not obligated to err again."[9]  974 F.3d at 1145.  As the Court has mentioned, however, Wilkerson does not point to an intervening change in the law that retroactively would disqualify him as a career offender, and the Court similarly has not identified such precedent.  At Wilkerson's initial sentencing, Judge Holmes applied the career-offender enhancement based on two of his prior convictions: (i) trafficking a controlled substance -- cocaine; and (ii) voluntary manslaughter.  See PSR ¶¶ 59-60, 64, at 20-21.  The Guidelines for the year 2000, which were in effect when Wilkerson was sentenced, specifically enumerate manslaughter as a crime of violence that is eligible for career-offender consideration.

---

[9]The Tenth Circuit in United States v. Brown references specifically its interpretation of the Armed Career Criminal Act, 18 U.S.C. § 924(e), in United States v. Titties, 852 F.3d 1257 (10th Cir. 2017).  See United States v. Brown, 974 F.3d at 1145.

See U.S.S.G. § 4B1.2 cmt. n.1 (2000).[10]  See also United States v. Taylor, 724 F. App'x 665 (10th Cir. 2018)(rejecting the defendant's argument that the Guidelines are vague whether his previous convictions for robbery and kidnapping are considered crimes of violence, because the Guidelines commentary enumerate them explicitly)(citing United States v. Miller, 868 F.3d 1182, 1187 (10th Cir. 2017)).  To the extent that Wilkerson gestures to the First Step Act itself as support that the Court no longer should consider him a career criminal under the Guidelines, Wilkerson's second conviction for trafficking cocaine is also not eligible for modification under the First Step Act, because the Fair Sentencing Act's §§ 2 and 3 -- which the First Step Act implements retroactively, see First Step Act § 404 -- adjusts the relevant quantities of a mixture or substance containing cocaine base -- crack cocaine -- and not cocaine itself, see Fair Sentencing Act § 2.  Accordingly, the Guidelines' application of the career-offender enhancement for felony convictions of a crime of violence or a controlled substance offense still applies to Wilkerson's convictions for which Judge Holmes applied the enhancement originally.  See U.S.S.G. § 4B1.1 (2000).  The Court considered the relevant changes to the sentencing regime in its MOO, see MOO at 65, and Wilkerson has not pointed to intervening case law which would prompt the Court to reconsider its conclusion that Wilkerson's applicable Guidelines range is 262 to 327 months imprisonment.[11]

---

[10]The current version of the Guidelines enumerates "voluntary manslaughter" as a crime of violence as eligible for career-offender consideration.  U.S.S.G. § 4B1.2(a)(2).  The Court in any event considers Wilkerson's conviction for voluntary manslaughter to constitute a crime of violence under the Guidelines, in line with the Tenth Circuit's holding that "only those versions of manslaughter that involve intentional or purposeful behavior qualify as crimes of violence for purposes of § 4B1.2(a)."  United States v. Armijo, 651 F.3d 1226, 1237 (10th Cir. 2011).  See United States v. Armijo, 651 F.3d at 1236 n.12 (explaining that "our decision that the term 'manslaughter' as used in application note 1 to § 4B1.2 refers only to what has historically been labeled as voluntary manslaughter does not necessarily apply to the term manslaughter as used" elsewhere in the Guidelines).

[11]The Court notes that Wilkerson requested specifically that the Court reach this

Because the Court concludes that the career-offender enhancement applies to Wilkerson's previous convictions for voluntary manslaughter and trafficking of cocaine, the Court will deny the Second Reconsideration Motion and the Motion to Amend, and will not terminate Wilkerson's supervised release term.

**IT IS ORDERED** that: (i) the Movant's Motion for Reconsideration Pursuant to His June 9th, 2022, Revocation Hearing, filed November 7, 2022 (Doc. 645), is denied; (ii) the Movant's Motion for Reconsideration of Movant's Motion to Reduce Sentence Pursuant to the First Step Act § 404 Pursuant to 18 U.S.C. § 3582(c)(1)(B), filed January 2023 (Doc. 648), is denied; and (iii) the Movant'[s] Motion for Reconsideration of Movant's Motion to Reduce Sentence Pursuant to the First Step Act § 404 Pursuant to 18 U.S.C. § 3582(c)(1)(B) Pursua[n]t to This Motion to Amend, filed July 20, 2023 (Doc. 650), is denied.

_____
UNITED STATES DISTRICT JUDGE

---

imprisonment range, as well as a reduction to a time-served sentence and a six-year term of supervised release in his Reply to Government's Response to Motion to Reduce Sentence Pursuant to the First Step Act of 2018, at 8-10, filed March 25, 2019 (Doc. 601)(asserting that the appropriate Guideline imprisonment range is 262 to 327 months, requesting the Court impose a reduced sentence of time served, and requesting a reduction in supervised release from eight to six years). See also MOO at 65 ("Wilkerson's Guidelines range is thus 262 to 327 months imprisonment."); id. at 73 (reducing "Wilkerson's sentence to time served . . . [,] resulting in his immediate release," and concluding that "a six-year term of supervised release is sufficient, but not greater than necessary . . . ."). Further, to the extent that Wilkerson contends that the Court erred "in believing that it did not have the discretion to consider Petitioner's arguments that intervening changes of law and facts supported his motion under the First Step Act," Second Reconsideration Motion at 1, he has not pointed to specific language from the Court indicating this, and the Court, upon review of its MOO, has not identified such language.

*Parties and counsel:*

Alexander M. M. Uballez
   United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

-- and --

Terri J. Abernathy
   Assistant United States Attorney
United States Attorney's Office
Las Cruces, New Mexico

       *Attorneys for the Plaintiff*

Daryl Wayne Wilkerson
Hobbs, New Mexico

       *Defendant pro se*